**Ben GOLDBERG, a/k/a Ben Bentley, Plaintiff-Appellant,**

v.

**Charles LISTON, a/k/a Sonny Liston and Intercontinental Promotions, Inc., a Pennsylvania Corporation, Defendants-Appellees.**

**No. 17942.**

United States Court of Appeals, Seventh Circuit.

Aug. 6, 1970.

Rehearing Denied Sept. 22, 1970.

Elmer Gertz, Wayne B. Giampietro, Malcolm P. Brown, Chicago, Ill., for plaintiff-appellant.

Alfred B. Teton, Richard H. Prins, Chicago, Ill., for defendants-appellees.

Before SWYGERT, Chief Judge, PELL, Circuit Judge, and DOYLE, District Judge.*

PER CURIAM.

Plaintiff, Ben Goldberg (also known as Ben Bentley), brought this diversity action against defendants, Charles Liston (Sonny Liston) and Intercontinental Promotions, Inc., alleging breach of an oral contract calling for plaintiff to serve as Liston's personal press representative. The case was tried to the district court and at the conclusion of plaintiff's case, both defendants moved under Fed.R.Civ.P. 41(b) for dismissal. At the same time plaintiff moved for summary judgment against both defendants. On the basis of the testimony and facts stipulated by the parties, the court denied plaintiff's motion for summary judgment and granted defendants' motion to dismiss. Judgment was entered for defendants and plaintiff appeals. We affirm.

The issues of this appeal are primarily factual and under Fed.R.Civ.P. 52(b)

---

\* Judge James E. Doyle is sitting by designation from the United States District Court for the Western District of Wisconsin.

we must accept the district court's findings unless they are clearly erroneous. Plaintiff's complaint seeks recovery upon the contract and also on the basis of *quantum meruit*. We treat these questions separately.

### The Contract Action

Plaintiff's complaint alleges that immediately after the first prize fight between Sonny Liston and Floyd Patterson in Chicago on September 25, 1962, Liston hired plaintiff to serve as his personal press representative. At a meeting in December 1962, Liston, as president and part-owner of Intercontinental Promotions, allegedly promised that Intercontinental would pay plaintiff $300 a week and that Liston personally would pay plaintiff an additional $300 a week to handle all of his public relations. As a result plaintiff immediately began working for Liston and in April 1963, went to Las Vegas to prepare for Liston's rematch with Floyd Patterson on June 22, 1963. During this period plaintiff was not paid by either Liston or Intercontinental although he allegedly sought payment from Liston's manager, Jack Nilon.

▇ The district court held that "the evidence introduced in plaintiff's case clearly established that Bentley never entered into a binding and certain agreement with Liston." This conclusion rested upon two bases. First, the court held that neither Liston nor anyone connected with Intercontinental entered into a concrete, enforceable, and specific agreement with plaintiff. Since the district judge was entitled to disbelieve the testimony of plaintiff's witnesses, Sun Life Assur. Co. of Canada v. Stacks, 187 F.2d 17, 20 (7th Cir. 1951), we do not think this finding was clearly erroneous. The court held in the alternative that, although Liston was

president of Intercontinental, he had no authority to act for or on behalf of the corporation in business dealings. We agree. It is clear that plaintiff was well aware that Liston was uneducated in business matters and that the transactions for Intercontinental were always handled by other persons.[1]

### Quantum Meruit

▇ The absence of a binding contract, of course, does not defeat plaintiff's recovery under a *quantum meruit* theory. In the spring of 1963 plaintiff performed substantial services for Liston and Intercontinental. In addition to arranging press appearances in Chicago following the first Liston-Patterson fight, plaintiff set up Liston's training camp in Las Vegas for the rematch with Patterson. He also handled press relations for Liston during the six-week training period prior to the championship bout.

▇ We agree with the district court, however, that plaintiff was fully compensated for these services. Thus the evidence shows that after the first Liston-Patterson match, plaintiff met with Liston's representatives in Philadelphia. At that time, he received a check for $2500. On the face of the check were written the words "payment in full for services." Plaintiff argues that this check was merely a bonus but has failed to present credible evidence to support this assertion. In the absence of affirmative evidence to the contrary, we think this check constitutes full satisfaction of defendants' obligation to plaintiff.

Finally, plaintiff asserts that he rendered further services after receiving the check. The only evidence to support this assertion is testimony that plaintiff helped to arrange a press conference in Denver announcing agreement to a

---

1. Plaintiff's claim that Liston entered into an oral contract awarding him three closed-circuit television locations in Chicago for the second Liston-Patterson fight is also not supported by the evidence. The fight promoter, Theater Network Television, controlled these rights. Neither Liston nor Intercontinental could award locations to plaintiff and the evidence demonstrates only that Liston promised "to put in a good word for Bentley" with Theater Network Television.

championship match between Liston and Cassius Clay. Although he had some discussion concerning services in connection with that fight, plaintiff severed his relation with Liston before the promotion for that fight had started. We think any services performed by plaintiff subsequent to the second Liston-Patterson fight were of little consequence and performed without a reasonable expectation of additional compensation. Thus, on the basis of the foregoing facts, we are convinced that the district court correctly concluded that the $2500 check represented an accord and satisfaction of plaintiff's claim against Liston and Intercontinental.

The judgment of the district court is affirmed.