Samuel G. COOK et al., Plaintiffs-Appellants,

v.

The ADVERTISER COMPANY, Inc., et al., Defendants-Appellees.

No. 71-1749.

United States Court of Appeals, Fifth Circuit.

March 21, 1972.

---

---

J. J. Levin, Jr., Morris S. Dees, Jr., Levin & Dees, Solomon S. Seay, Jr., Gray, Seay & Langford, Montgomery, Ala., for plaintiffs-appellants.

Nathaniel R. Jones, Gen. Counsel, William D. Wells, Asst. Counsel, James Meyerson, Atty., N.A.A.C.P., Special Contribution Fund, New York City (for amicus curiae N.A.A.C.P.).

Arthur B. Hanson, W. Frank Stickle, Jr., Ralph N. Albright, Jr., Washington, D. C., for amicus curiae The American Newspaper Publishers Assn.; Hanson, O'Brien, Birney & Stickle, Washington, D. C., of counsel.

M. R. Nachman, Jr., Steiner, Crum & Baker, Montgomery, Ala., of counsel, for defendants-appellees.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

COLEMAN, Circuit Judge:

May a Court exercise jurisdiction over the content and arrangement of the *society pages* of a newspaper? That is the real issue in this appeal. In a judgment dismissing the complaint, the District Court [Johnson, Chief Judge] held in the negative, Cook v. Advertiser Company, 323 F.Supp. 1212 (M.D., Ala., 1971). We affirm.

One of the class action plaintiffs, Samuel G. Cook, a Negro, alleged that on May 18, 1970 he tendered the photo and wedding announcement of his fiancee, Miss Sherrie Ann Martin, of the same race, to the society editor and to the publisher of The Montgomery Advertiser, the only newspaper of any substantial circulation in the area, with the request that the story appear on the *society page* and "not the black page". The proposed restrictions were rejected; the story and the picture were never published. The wedding occurred on June 12, 1970.

On June 15, 1970 Cook and seven others filed a class action against the newspaper and its publisher, alleging that:

"The Advertiser publishes a society section in its Sunday edition where it prints bridal announcements and wedding stories and pictures. Stories and pictures appearing in this society section are accepted only from white people. All stories and pictures submitted by whites from Montgomery County are published in this society section. The Advertiser refuses to accept and print wedding stories from Negroes to appear in the society sec-

tion. Wedding stories and pictures of Negro persons are accepted and printed outside the regular society section on a Negro news page."

It was charged that the denial of the publication on the regular society page is a badge of slavery prohibited by 42 U.S.C. § 1981. It was further alleged:

"Plaintiff Cook and his fiance suffered humiliation and embarrassment because their wedding announcement and picture failed to appear in the Advertiser as a direct result of Defendants' refusal to *contract* [emphasis by the Court] with Plaintiff Cook and because they were singled out for unequal treatment due to their race. Plaintiff Cook claims twenty thousand dollars ($20,000.00) as punitive and compensatory damages for this violation of his rights and for the humiliation and mental suffering he underwent because of the Defendants' illegal and discriminatory actions. Plaintiff Cook also claims attorneys' fees, court cost and demands a jury trial on the damage aspect of his claim.

"Plaintiff Cook seeks to enjoin the Defendant from refusing to print the picture and story of his wedding on June 12, 1970 and seeks an order requiring Defendants to print said story in the Sunday society section within a reasonable time after June 12 to be meaningful."

The plaintiffs further prayed that the defendants be enjoined "from refusing to contract with Negro citizens on an equal basis for white citizens in respect to news stories concerning bridal announcements."

Miss Martin, the prospective bride, whose picture and story were in this manner rejected, did not join the litigation as a party plaintiff.

The Montgomery Advertiser filed a motion to dismiss. Among the grounds assigned were that to exercise jurisdiction over the defendants in this case or the granting of the relief sought by the plaintiffs "would be violative and contrary to the First Amendment of the Constitution of the United States and would constitute an abridgement of the freedom of the press."

The District Court rejected the 42 U.S.C., § 1981 argument of plaintiffs on the ground that the section does not reach private action. Thereafter, the Fifth Circuit decided Sanders v. Dobbs Houses, Inc., 1970, 431 F.2d 1097. In that case it was held, under 42 U.S.C., § 1981, that a Negro employee who was allegedly discharged solely because she was a Negro could state a claim against a private employer. Plaintiffs below then requested the District Court to reconsider its order of dismissal, citing *Sanders*. The District Court filed an additional memorandum opinion denying the motion for reconsideration, concluding:

"Assuming that the plaintiffs have a statutory right under Section 1981 to have their bridal announcements published and that the defendant newspaper has a constitutional right to a 'free press', this Court reaches the firm conclusion that said defendant's constitutional right to be free from judicial interference in the selection of announcements for publication far outweighs the Section 1981 right plaintiffs are attempting to assert. It is for this same reason that plaintiffs cannot prevail against defendants upon a First Amendment theory."

42 U.S.C. § 1981, provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . .".

Cook claims that the method pursued by the Montgomery Advertiser for the acquisition and use of material in its society page amounted to an implied contract upon presentation of the questionnaire and the picture, thus conferring § 1981 jurisdiction. The paper did distribute printed forms (or blanks) to be filled in and signed by those wishing to

have an announcement appear on the society page. This form was entitled:

"The Montgomery Advertiser and Alabama Journal Society Department

Outline for Engagement Announcement."

The information requested was the name of the bride—bride elect; the names of her parents and grandparents, with addresses; the name of the bridegroom elect, with like information as in the case of the bride; schools and colleges attended or now attending, with the names of clubs, sororities, and fraternities to which the individual had belonged, where employed, and the date and place of wedding. The questionnaire had to be signed with the name, address, and telephone number of the person furnishing it, no doubt to insure its authenticity and to identify any who might file an erroneous report.

The Advertiser charged no fee for stories appearing on its society page and the parties furnished, at their expense, any picture which they desired to have published. The actual story was written from the information appearing on the questionnaire.

There was no statement on the questionnaire, or elsewhere, that the Advertiser agreed to prepare and publish a story on each and every questionnaire filed with it.

In its original opinion the District Court did not decide whether there was a contract but dismissed because even if there was a contract there was no state action. In the order denying the motion for reconsideration, filed March 11, 1971, the Court again omitted decision specifically as to whether Cook had an implied contract, stating:

"Assuming *arguendo* that Section 1981 prohibits discrimination in the type of contractual relationship in question, there is a more serious hurdle plaintiffs must clear in order to withstand defendants' motion to dismiss in this case [the First Amendment]."

Accordingly it was upon First Amendment grounds that the District Court based its second dismissal of the complaint.

Courts must look first to their jurisdiction, even if the look is of their own initiative. Our analysis of the transactions between Cook and the Advertiser leads us to believe that they did not amount to a contract, implied or otherwise. It appears that the Advertiser generally wrote and published items on its society page, based on information furnished in questionnaires voluntarily filed by those who wanted an item published. There was never an agreement that every questionnaire, without exception, would result in a story on the society page. The newspaper received no pecuniary consideration from any person filing a questionnaire. There was no agreement to publish and there was no consideration received for any publication actually made. We have been cited no case which holds that such an arrangement constitutes a binding contract between the parties. Thus no § 1981 jurisdiction could arise under the right to contract.

Having determined that the method pursued by the Montgomery Advertiser for acquisition and use of material in its society pages did not constitute a standing offer which became a binding contract when material was submitted, we do not reach the second question presented, that is whether or not granting of the relief sought by the plaintiffs-appellants would be violative of the First Amendment to the Constitution of the United States as constituting an abridgment of freedom of the press.

The judgment appealed from is

Affirmed.

WISDOM, Circuit Judge (concurring specially):

42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts . . . as is enjoyed by

white citizens." § 1981 prohibits both private discrimination in the making of contracts and officially-supported discrimination as well. Sanders v. Dobbs Houses, Inc., 5 Cir. 1970, 431 F.2d 1097, reh. den. (en banc) 431 F.2d 1101. See also, e. g., Scott v. Young, 4 Cir. 1970, 421 F.2d 143, cert. den. 398 U.S. 929, 90 S.Ct. 1820, 26 L.Ed.2d 91; Waters v. Wisconsin Steel Works, 7 Cir. 1970, 427 F.2d 476, cert. den. sub nom. United Order of American Bricklayers & Stone Masons v. Waters, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151; Cf. Sullivan v. Little Hunting Park, Inc., 1969, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386; Jones v. Alfred H. Mayer Co., 1968, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (interpreting 42 U.S.C. § 1982).

The plaintiff Cook argues that he was denied the same right to "make and enforce" a contract with the Advertiser as is enjoyed by white residents of Montgomery. Cook's argument is appealing. An applicant takes the time and the trouble to record in writing and deliver to the Advertiser information about his impending marriage. In return, the paper bears the expense of publishing the applicant's wedding announcement, thereby providing the applicant and his family with flattering and enjoyable publicity. Though no cash is exchanged, each side incurs a detriment and each side receives a benefit. One could say that the Advertiser has promulgated an offer for a unilateral contract, by communicating to the white residents of the Montgomery area that it will promise to print their announcements if they provide the necessary information. When the information is presented to the paper, a contract is formed, or so the argument might run; a promise is exchanged for performance.

Yet the argument proceeds from a mistaken premise. Not every exchange of conferred benefits creates a contract. In this case Cook cannot succeed in demonstrating the formation of a contract between the Advertiser and Montgomery residents simply because the residents provide the Advertiser with information

and the advertiser provides the residents with publicity. The question, rather, is whether Montgomery residents possess any enforceable right to publication of their wedding announcements once they render to the paper what the paper asks of them. A contract "always creat[es] a special right *in personam,* a right in the promisee against the promisor, with the correlative special duty in the promisor to the promisee of rendering the performance promised." Corbin on Contracts, § 4 (1963 ed.).

I do not believe that delivery of the requested information to the Advertiser creates in any applicant the right to require the paper to publish his announcement, or any right to damages if the announcement is not published. My conclusion is shaped by, if not compelled by, the First Amendment's guarantee of a free press. It is most unlikely that any court in our land could constitutionally enforce a "promise" by a newspaper to publish any particular item of news. See Shelley v. Kraemer, 1948, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161. For the determination of what news is—the selectivity of the press—lies close to the heart of a press that may speak, or not speak, as it sees fit. Even if a newspaper stooped to sell its news coverage for hard cash, I suppose the most a frustrated buyer would be entitled to would be a refund of the dollars he had parted with.

It is more accurate to describe a newspaper's "promise" to publish any particular item as a "promise" that is conditioned on the newspaper's informed discretion as to what is news—and one which is plainly so understood by the public. When a paper publishes scholarship announcements, silver wedding anniversary stories, earnings reports on local businesses, athletic results, and even political interviews, it implicitly "promises" the focal individual who gives of his time that the paper will incur the expense of crafting, publishing, and disseminating an account of the individual's accomplishments, happy coincidences, or whatever. Only occasionally

does such a story fall through; for example, regular publication is the rule for wedding announcements of most if not all white residents of Montgomery. But it is well understood by all who furnish information to a newspaper that the object of their efforts may or may not come to fruition, and that it will be left to the informed choice of the paper's editors. In short, I would say that the "offer" for a unilateral "contract" communicated by the Advertiser is an offer to publish on such terms as it sees fit. It is an offer to exchange only an unenforceable promise to publish. Black citizens, then, have "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens". Neither white citizens *nor* black citizens form enforceable contracts of publication with the Advertiser.

Cook argues vehemently that we should at least require a trial to determine whether the publication of wedding announcements is so "mechanical" and arguably therefore so "commercial" as to fall beyond the prerogatives of a free press. But Cook has simply culled a characteristic superficially common to both commercial advertising and to these wedding announcements and asked us to hold that both must be treated alike for purposes of the First Amendment. Even assuming that the layout of the wedding announcements is mechanical, a determination of newsworthiness —however warped—underlies the Advertiser's decision to print more white wedding announcements than black ones. A similar determination underlies the printing of obituaries, sports reports, church announcements, and any number of other accounts of events which may be printed in highly homogeneous fashion from day to day. Mechanical layout is not a reliable indicator that the paper is not exercising some form of editorial discretion in deciding what to print. I think the First Amendment protects that editorial discretion, however perverse may be the manner of its exercise.

It is true that commercial advertising, once accepted for printing, is subject to congressional regulation. See United States v. Hunter, D.Md.1971, 324 F. Supp. 529. But that does not mean that routine news stories, such as wedding announcements, are to be subject to Congressional regulation. Commercial advertising is a marketplace form of communication for purposes of the First Amendment: the stuff of the communication is prices, wages, buying and selling. Commercial advertising is commerce. Like news, people read commercial advertising, and read it with interest, but it is not news because people read it any more than news is commercial advertising because it is printed in routine fashion. I see nothing to be gained by requiring a trial which might enable Cook to prove that the editorial techniques which lead to publication of wedding announcements in the Advertiser are mechanical. Those stories are still news stories and they are not commercial advertising.

I concur in the Court's conclusion that no contract is formed between the Advertiser and those who submit wedding announcements to the paper for publication.