**U. S. CONTROLS CORP., Plaintiff-Counterdefendant-Appellee and Cross-Appellant,**

**Spencer C. Schantz and Robert Rose, Plaintiffs-Counterdefendants-Appellees,**

**and**

**Erwin E. Nemmers, Counter-defendant-Appellee,**

**v.**

**Richard Q. WINDLE, Defendant-Counterplaintiff-Appellant-Cross-Appellee.**

**Nos. 73–1996, 73–1997.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 20, 1974.

Decided Jan. 24, 1975.

Peter A. Flynn, Chicago, Ill., Owen W. Crumpacker, Hammond, Ind., for Richard Q. Windle.

Herbert C. Snyder, Jr., Indianapolis, Ind., for U. S. Controls Corp.

Before HASTINGS, Senior Circuit Judge, and STEVENS and SPRECHER, Circuit Judges.

HASTINGS, Senior Circuit Judge.

U. S. Controls Corp. (Controls), a Wisconsin corporation, together with Spencer C. Schantz and Robert Rose, brought this diversity action for a declaratory judgment against Richard Q. Windle, a citizen of Indiana. Plaintiffs sought a declaration that there was no binding and enforceable agreement between the parties to transfer to Windle one-third of the outstanding authorized shares of Controls and further that Windle had no rights at all in and to any of such stock.

Windle filed a counterclaim against Controls, Schantz and Rose in three counts claiming (1) $250,000 in compensatory damages; (2) specific performance of the alleged agreement to transfer one-third of the corporate stock and for one-third of the profits and losses of the corporation; and (3) for an account-ing. Subsequently, Erwin E. Nemmers, a stockholder and director of Controls, was added as a defendant to the counterclaim.

Following a trial to the court, without the intervention of a jury, over a period of several days, the trial court filed its written unreported memorandum of decision as its findings of fact and conclusions of law. Based thereon, the court ordered, declared and adjudged that defendant Windle had no rights whatsoever in and to any of the authorized shares of the capital stock of U. S. Controls Corp. Further, in Windle's counterclaim, the court ordered and adjudged that Windle recover from counterdefendant, U. S. Controls Corp., judgment in the sum of $26,009.25, but that he should recover nothing against counterdefendants Schantz, Rose and Nemmers; each party to bear its own costs. Windle has appealed and Controls has cross-appealed.

The following narrative is gleaned from a pre-trial order and the detailed findings of the trial court as set out in its memorandum opinion. These findings have adequate support in the record and may not be set aside as clearly erroneous under the strictures imposed by Rule 52(a), Federal Rules of Civil Procedure, Title 28, U.S.C.

Early in 1968, Rose was a Wisconsin molded plastics manufacturer. Schantz was an electrical engineer for Deltrol Controls Corporation, an electrical controls manufacturer. Windle, a resident of Indiana, was a salesman for Appliance Manufacturing Company, also a producer of electrical controls. Rose knew both Windle and Schantz, who were unacquainted with each other. After Rose had some preliminary conversations with Windle and Schantz about the possibility of forming a new business, the three met together for the first time on June 21, 1968, at the plant of the Whirlpool Corporation in St. Joseph, Michigan. Windle had been calling upon various employees of Whirlpool, a customer of Appliance. At that time Windle introduced Rose and Schantz to Tom Ludlam, a

buyer for Whirlpool. A proposed buzzer was discussed. Rose and Schantz left the meeting with prints of the buzzer for the purpose of building a sample. Subsequently, Rose and Schantz submitted a sample but Whirlpool decided not to buy the buzzer.

Windle again communicated with Ludlam. Schantz received a letter dated August 8, 1968, from the products engineer of Whirlpool with a sketch showing the specifications for a magnetically latched push-to-start switch and an invitation to submit a design for such a device. In September 1968, Rose and Schantz submitted a sample push-to-start relay to Whirlpool, with a price quotation. Rose and Schantz had additional meetings with various personnel at Whirlpool and Windle was included in some of these meetings.

On February 4, 1969, Whirlpool issued a tool purchase order in the amount of $37,835 for tooling the device. Between that time and July 1969, tooling was obtained and sample push-to-start relays were produced. This work was all done at the premises of Rose Tool and Plastics, Inc., in Milwaukee. A blanket purchase order for the relays had been issued. Whirlpool continued to order in large quantities. Although U. S. Controls Corp. was not incorporated until on or about July 1, 1969, the tooling order and the blanket purchase order for the push-to-start relays were both addressed to U. S. Controls Corp.

U. S. Controls Corp. was incorporated by Schantz and Rose. Of the 10,000 shares of common stock authorized, Schantz and Rose each received 4,300 shares, and Erwin Nemmers received 200 shares with an option to buy 200 additional shares. The remaining shares were held principally for conversion of $25,000 of 7 per cent convertible debenture bonds issued to investors. Although Windle was first asked to be a director, Rose and Schantz subsequently withdrew the offer and first named Schantz's wife, who was later succeeded by Nemmers, as the third director.

Windle was not informed of the actual incorporation of Controls or of the issuance of the stock at the time of the occurrence. Shortly after Controls began actual production and shipment of the push-to-start relays to Whirlpool in late July 1969, Windle came to the office of Rose and Schantz at the Rose plant and demanded one-third of the stock in the corporation. Windle's stock demand was refused but he was offered compensation which he did not accept. The present litigation followed.

■ The essential issue raised on the complaint is whether the trial court erred in finding and concluding that the "evidence in this case fails to establish, even by implication, an agreement between the parties as alleged by Windle." We have carefully considered the reasons advanced by the trial court in its memorandum opinion, as well as the after-the-fact showing of an eventual dispute and falling out between Rose and Schantz. We have concluded that the record supports the findings of the court and that they are not clearly erroneous. We also agree that there is no reason to further consider plaintiffs' contention that such an agreement falls within the statute of frauds. We have considered other contentions by defendant but are not persuaded by them.

■ The issue raised on defendant Windle's counterclaim is essentially whether the trial court erred in limiting the amount of his compensation to the sum of $26,009.25. The record clearly shows that Windle was entitled to compensation for his services and was offered compensation at the time of his stock demand. The trial court quite properly held that the "absence of an enforceable contract does not defeat Windle's right to recover for the reasonable value of his services to the corporate counterdefendant under a quantum meruit theory." Goldberg v. Liston, 7 Cir., 431 F.2d 1101, 1103 (1970).

The record shows that practically all of Control's business was furnishing products to Whirlpool Corporation and Hobart Mfg. Co. Each of these customers for Controls was the result of initial contacts and introductions made by Windle at the instance and solicitation of

Schantz and Rose. Windle performed the services with a reasonable expectation of payment therefor. The trial court correctly found "this to be a proper case for equitable relief in order to prevent the manifest unjust enrichment of plaintiffs at the expense of Windle."

The record indicates that for the two-year period from July 1, 1969, when Controls commenced operations, to June 30, 1971, Controls made net sales of $1,040,370. Commissions paid on sales of such electrical components ranged from 2½ to 10 per cent. The court found a commission of 2½ per cent to be reasonable under the circumstances and on this basis allowed Windle the sum of $26,009.25 as the reasonable value of his services to Controls. Controls argues that the allowance is entirely precluded because Windle breached his duty to his own employer, Appliance, by not relaying the information concerning the opportunity to it instead of to Controls, a prospective competitor. In any event, Controls urges that the award is unreasonably high. Windle contends the award is too low.

The trial court reviewed the record and found that Appliance was not engaged in the manufacture or sale of any electrical switch or relay directly competitive to the push-to-start device at the relevant time. The court also noted that Windle continued in the employment of Appliance and its successor corporation.

Rose testified that the usual rate of commissions in the Milwaukee area in the appliance control field varied from 3 per cent to 12 per cent, depending upon the product for sale, and that the average in the area was 5 per cent. He also testified that he had employed a commissioned salesman at 2½ per cent. Controls employed a salesman in 1971 at a rate of 3 per cent. There was other testimony which indicated a rate higher than 2½ per cent. Further, the trial court limited Windle's compensation to the sales for the first two years. This appears to have been a reasonable cut-off date, although Controls had additional sales of $95,800.71 in December 1971; $1,750,957.22 in 1972; and $735,217.35 in the first six months of 1973.

The accuracy of the sales figures and the testimony of the prevailing rates of compensation were not effectively rebutted. Controls was largely in the business of selling and continued to sell the same products to the same two customers which Windle discovered and secured for them. Based upon our examination of the record, we have concluded that the finding of the trial court that "a commission of 2½ per cent [is] reasonable under the circumstances . . . [and that] Windle is thus entitled to recover the sum of $26,009.25 as the reasonable value of his services to U. S. Controls Corp.," is clearly erroneous. We have further concluded that this would not adequately compensate Windle for his services during the two-year period in question.

It is our considered judgment that a commission of 5 per cent on the net sales of $1,040,370, or $52,018.50, would more fairly provide equitable relief for Windle in this situation, and that such amount should be paid by counterdefendant U. S. Controls Corp. We have further concluded that the judgment on the counterclaim in favor of Nemmers, Schantz and Rose should not be disturbed.

In light of the foregoing, we affirm the judgment on the complaint that defendant Richard Q. Windle has no rights whatsoever in and to any of the authorized shares of the capital stock of U. S. Controls Corp. We further affirm the judgment on defendant Windle's counterclaim in favor of counterdefendants Erwin E. Nemmers, Spencer C. Schantz and Robert Rose, and that defendant take nothing from them. We vacate the judgment on the counterclaim in favor of defendant in the amount of $26,009.25 and remand the case to the district court with directions to modify the same by rendering judgment thereon in favor of defendant Windle in the amount of $52,018.50. Each party shall bear its own costs.

Affirmed in part, vacated in part and remanded with directions.