Willie ADAMS, Plaintiff-Appellant,

v.

Ralph McDOUGAL, Sheriff, Parish of St. Bernard, State of Louisiana, et al., Defendants-Appellees.

No. 81–3393.

United States Court of Appeals, Fifth Circuit.

Jan. 10, 1983.

Joseph W. Thomas, New Orleans, La., for plaintiff-appellant.

Richard Michalczyk, Metairie, La., for Ralph McDougal.

John F. Rowley, Dist. Atty., pro se.

Before WISDOM, RANDALL and TATE, Circuit Judges.

WISDOM, Circuit Judge.

This appeal involves alleged violations of the Civil Rights Statutes, 42 U.S.C. §§ 1981, 1983.[1] The plaintiff, Willie Adams, appeals from a trial court bench ruling that the Sheriff of St. Bernard Parish, Louisiana, had not discriminated against Adams in the terms and conditions of his employment or in its failure to rehire him. Although the trial court was not clearly erroneous in its factual finding regarding the terms and conditions of Adams's employment, it used the wrong legal standard in evaluating Adams's claim that the failure to rehire him was discriminatory.

## I.

In 1975, Adams applied for the position of deputy sheriff with St. Bernard Parish, Louisiana. With substantial help from the parish sheriff, John Rowley, Adams qualified for the position and was hired. In August 1978, Adams quit his job as deputy sheriff to take care of an ill relative in Florida. He returned to St. Bernard Parish in October 1978 and asked Sheriff Rowley to be rehired. Rowley refused and Adams filed this suit against Rowley and the current sheriff, Ralph McDougal.

Adams contends that Rowley and McDougal deprived him of his civil rights in violation of 42 U.S.C. §§ 1981 and 1983. Adams alleges two distinct violations of the Civil Rights Acts. First, Adams argues that Rowley discriminated against him during Adams's tenure as a deputy sheriff in the terms and conditions of his employment. In particular, Adams cites the practice of assigning black deputies to old, second-hand patrol cars, painted white, rather than the new patrol cars, painted green, used by white deputies. Adams also contends that black deputies were assigned to patrol only

1. 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

black areas. Finally, Adams contends that Sheriff Rowley did not allow black deputies to go to the courthouse to receive their day's assignments and that the black deputies were paid lower salaries.

Second, Adams alleges that Rowley and McDougal refused to rehire him upon his return from Florida because he was black. In support of this contention, he points to evidence that a number of white deputies were hired during the period he was trying to get his job back. The defendants respond that, at the time Adams asked for his job back, Sheriff Rowley was a lame-duck sheriff and did not wish to saddle Sheriff-elect McDougal with any last minute appointments. Rowley also maintains that any white deputies appointed while he was a lame-duck sheriff had been "in process" before the election of McDougal.

The trial court held that Adams had failed to show a *prima facie* case of discrimination in the terms and conditions of his employment. The court relied on evidence Rowley and McDougal presented that any dissimilarities between the jobs of white and black deputies were due to nondiscriminatory factors; "work distribution was the result of numerous factors such as employee preferences, job qualifications, and economic conditions affecting job availability".

Regarding Adams's inability to regain his job, the district court held that Adams did not have a "legal right of action based upon defendant's alleged refusal to rehire him as a parish deputy sheriff when he left the force at his own volition." The court grounded this holding on a finding that Adams was an appointee rather than an employee of the sheriff. Citing *Wilson v. Kelley*, N.D.Ga., 294 F.Supp. 1005, *aff'd per curiam*, 1968, 393 U.S. 266, 89 S.Ct. 477, 21 L.Ed.2d 425, and *Kyles v. Calcasieu Parish Sheriff's Dept.*, W.D.La.1975, 395 F.Supp. 1307, the district court reasoned that a deputy's relationship to a sheriff is more personal than an ordinary employment relationship. The court concluded that since the deputy's tenure depends almost entirely on the whim of the sheriff and can in no event exceed the term of the appointing sheriff, the deputy has no expectation of continuing employment, and thus no contractual rights. Finding that Adams sought an appointment as a public official rather than an employee under an employment contract, the court held that § 1981 offered no protection, particularly in the absence of any race-based animus.

II.

In evaluating Adams's § 1983 challenge to the terms and conditions of his employment as a deputy sheriff, the trial court stated that the burden of showing purposeful discrimination by a preponderance of the evidence rested on Adams. The court held that the evidence presented at trial did not make out a *prima facie* case of intent to discriminate between black and white deputies on the part of the defendants. In particular, the court pointed to evidence that black deputies did, in fact, patrol mixed neighborhoods, that many second-hand patrol cars were driven by whites, that black deputies were allowed to report to the courthouse if they chose to do so, and that the same criteria governed the pay of all deputies.[2] On appeal, Adams does not contend that the trial court used the wrong legal principles; only that the court's evaluation of the evidence was incorrect.

We must evaluate the trial court's holding of no intent to discriminate under a clearly erroneous standard. *Pullman-Standard v. Swint*, 1982, 456 U.S. 273, 288, 102 S.Ct. 1781, 1790, 72 L.Ed.2d 66, 82; *Lerma v. Bolger*, 5 Cir.1982, 689 F.2d 589, 592. Under the clearly erroneous standard, we do not reject the district court's findings unless we are left with the definite and firm impression that a mistake has been made. *Wright v. Western Electric Co.*, 5 Cir.1981, 664 F.2d 959, 963. Clearly, the evidence the trial court considered conflicted regarding the possible existence of dis-

---

2. As evidence that the defendants did not apply the salary criteria in a discriminatory fashion, the trial court made reference to a white deputy with qualifications similar to Adams's qualifications who received the same pay as Adams.

criminatory intent. For each discriminatory condition of employment alleged by Adams, the defendants produced contradictory evidence showing no discrimination.[3] We shall not try to second guess the trial court on this purely evidentiary conflict. *See Thomas v. New Orleans,* 5 Cir.1982, 687 F.2d 80, 83.

### III.

Regarding his inability to regain his job, Adams contends that the trial court used the wrong legal analysis to evaluate his civil rights claim. The trial court held that Adams's status as an "appointee" disqualified him for § 1981 protection and negated any need for the trial court to determine whether Adams had made out a *prima facie* case of discrimination. Adams argues that his status as an appointee is irrelevant. Further, he contends that he has shown *prima facie* discrimination under the test set out in *McDonnell Douglas Corp. v. Green,* 1973, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 and as clarified in *Texas Department of Community Affairs v. Burdine,* 1981, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207.

The origin of the appointor/appointee distinction relied on by the trial court is the dictum in a footnote in *Wilson v. Kelley,* N.D.Ga., 294 F.Supp. 1005, *aff'd per curiam,* 1968, 393 U.S. 266, 89 S.Ct. 477, 21 L.Ed.2d 425. In *Wilson,* a three-judge panel, with Judge Tuttle dissenting, held that prisoners in the Georgia prison system did not have standing to challenge the process by which the Georgia Board of Corrections made appointments. Although it did not need to address the subject and stated that the "situation is not clear", the court made the

observation that elected officials should have freedom to choose their subordinates.[4] Relying on this dictum, in *Kyles v. Calcasieu Parish Sheriff's Dept.,* W.D.La.1975, 395 F.Supp. 1307, the district court held that 42 U.S.C. § 1981 offered no protection to a Louisiana deputy sheriff. The *Kyles* court reasoned that § 1981 provides a remedy for interference with employment contracts, but the plaintiff first must show some contractual employment relationship. Because the hiring of a deputy sheriff is the appointment of a public official, the court concluded that no "contract" existed and the plaintiff had no cause of action under § 1981. *Id.* at 1310–11. The trial court here found the reasoning of the *Kyles* court dispositive of Adams's § 1981 claim.

The Supreme Court dispelled any illusions regarding the powers of elected officials over appointments in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547. In *Elrod,* the Court held that the First Amendment guarantees of free speech and association protected political appointees from dismissal solely on the grounds of party affiliation. *Id.* at 372–73, 96 S.Ct. at 2689, 49 L.Ed.2d at 565. The Fourteenth Amendment similarly protects an appointee from discrimination on the basis of race. "[A]ny contribution of patronage dismissals to the democratic process does not suffice to override their severe encroachment on First Amendment freedoms. We hold, therefore, that the practice of patronage dismissals is unconstitutional under the First and Fourteenth Amendments..." *Id.* at 373, 96 S.Ct. at 2689, 49 L.Ed.2d at 565.

To the extent that the *Kyles* court felt constrained by a strict reading of Louisiana law regarding the status of deputy

---

**3.** It is particularly revealing to us that Adams did not complain about the terms and conditions of his employment while he was a deputy or immediately after he quit his job. Only after he was unsuccessful in regaining his job did he allege that he had been discriminated against during the period that he was a deputy.

**4.** In the elective-appointive area, however, the process is entirely political. Each elected

official must rise and fall on his performance and that of his appointed assistants. The courts would not presume to tell the President, or Governor, a Senator or Congressman that there are limitations on his cabinet or staff appointments. Similarly, other elected officials (such as the Sheriffs here) have freedom to choose such subordinates.
*Wilson,* 294 F.Supp. at 1011 n. 6.

sheriffs,[5] that decision is incorrect. Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.

Section 1981 refers to racial discrimination in the making and enforcement of contracts and is designed to include a federal remedy against discrimination in employment on the basis of race. *Johnson v. Railway Express Agency,* 1975, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295, 301; *Bobo v. ITT, Continental Baking Co.,* 5 Cir.1981, 662 F.2d 340, 342, *cert. denied,* 456 U.S. 933, 102 S.Ct. 1985, 72 L.Ed.2d 451. As such, this Court must give an expansive reading to the statute to effect the purposes intended by Congress in its passage.[6] *See Jones v. Mayer Co.,* 1968, 392 U.S. 409, 420–37, 88 S.Ct. 2186, 2193–202, 20 L.Ed.2d 1189, 1197–206; *Taylor v. Jones,* E.D.Ark. 1980, 495 F.Supp. 1285, 1290, *modified,* 8 Cir.1981, 653 F.2d 1193. The language of the statute must be construed with reference to federal law rather than to state law concepts. *Partin v. St. Johnsbury Co.,* D.R. I.1978, 447 F.Supp. 1297, 1300; *see Johnson v. Railway Express Agency,* 421 U.S. at 465, 95 S.Ct. at 1722, 44 L.Ed.2d at 304; *Calderon v. Martin County,* 5 Cir.1981, 639 F.2d 271, 273. The term contract, as used in § 1981, refers to "a right in the promisee against the promisor, with a correlative special duty in the promisor to the promisee of rendering the performance promised". *Cook v. Advertiser Co.,* 5 Cir.1972, 458 F.2d 1119, 1123 (Wisdom, J., concurring).

██ In this case, despite the indefinite tenure of the job of deputy sheriff, the sheriff and his deputies had expectations arising from the deputy's employment. The sheriff promised to pay his deputies a stated salary. In return the deputies promised to perform their jobs. We hold that the employment relationship presented in this case was sufficient to bring Adams under the protective umbrella of § 1981.

This holding is consistent with the recent 9th Circuit decision of *Ramirez v. San Mateo County District Attorney's Office,* 9 Cir. 1981, 639 F.2d 509. In *Ramirez,* the court held that a Mexican-American who had not been hired as a deputy district attorney had no claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Citing *Kyles v. Calcasieu Parish Sheriff's Dept.,* W.D.La.1975, 395 F.Supp. 1307, the court reasoned that a deputy district attorney serves at the pleasure of the district attorney who has plenary power to appoint and remove his subordinates. As an appointee, the deputy district attorney did not qualify as an "employee" for purposes of Title VII[7] and, therefore, could not take advantage of its provisions. 639 F.2d at 513. *But see Calderon v. Martin County,* 5 Cir.1981, 639 F.2d 271, 272–73. Nevertheless, the court held that the case was properly tried under 42 U.S.C. §§ 1981 and 1983. *Id.* at 514. The implication of the court's holding is that § 1981 provides a remedy to a party claiming discrimination in employ-

5. *See Boyer v. St. Amant,* La.App.1977, 364 So.2d 1338.

6. Congress based § 1981 mainly on § 1 of the Civil Rights Act of 1866, 14 Stat. 27. Similar language is found in § 16 of the Enforcement Act of 1870, 16 Stat. 144. Section 18 of the 1870 Act also reenacted the 1866 Act. The present version is the product of the 1874 codification of federal statutory law. *Runyon v. McCrary,* 1976, 427 U.S. 160, 168 n. 8, 96 S.Ct. 2586, 2593 n. 8, 49 L.Ed.2d 415, 423 n. 8.

7. If there was a lack of expectation of continued employment that lack would be fatal to a claim under the Fourteenth Amendment, because the plaintiff has no property interest protected by the state. *See White v. Thomas,* 5 Cir.1981, 660 F.2d 680, 684, *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148; *McMillian v. Hazlehurst,* 5 Cir.1980, 620 F.2d 484, 485.

ment even if the desired position is appointive and not for a definite period of time.[8]

■ The trial court's use of an "appointor/appointee" analysis prevented the trial court from examining the facts of the case under the proper legal standards. To establish a *prima facie* violation of § 1981, a plaintiff must make the same showing required under Title VII. *Payne v. Travenol Laboratories, Inc.,* 5 Cir.1982, 673 F.2d 798, 818; *Rivera v. City of Witchita Falls,* 5 Cir.1982, 665 F.2d 531, 534 n. 4. In order to prove racially discriminatory treatment in violation of Title VII, Adams bears the initial burden of establishing a *prima facie* case of racial discrimination. *Texas Department of Community Affairs v. Burdine,* 1981, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207, 215; *McDonnell Douglas Corp. v. Green,* 1973, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677.

Adams can meet this burden by showing: (i) That he belongs to a racial minority; (ii) That he applied and was qualified for a job for which the employer was seeking applicants; (iii) That, despite his qualifications, he was rejected, and (iv) That, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677; *Byrd v. Roadway Express, Inc.,* 5 Cir.1982, 687 F.2d 85, 86. At that point, the burden of going forward shifts to the defendants to rebut the presumption by submitting sufficient evidence to show clearly a legitimate nondiscriminatory reason for rejecting Adams. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094, 67 L.Ed.2d at 216. Adams may still recover if he can show that the defendant's proffered reason is not the true reason for the employment decision, but only a pretext for discrimination. *Id.* at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217.[9] Accordingly, we must reverse that portion of the trial court's decision holding that Adams's status

as an appointee disqualified him for § 1981 protection, and remand the case for reconsideration in the light of applicable federal standards.

At trial, Adams produced evidence that at least one white deputy sheriff, Vega, who had qualifications similar to Adams's, was rehired about the time Adams requested his old job back. The record is unclear as to the reason, if any, that Sheriff Rowley chose to rehire Vega rather than Adams. On remand, the district court should weigh the facts relative to the rehiring of Vega, as against Adams, in the light of the *McDonnell Douglas-Burdine* test. *Williams v. New Orleans Steamship Ass'n,* 5 Cir.1982, 688 F.2d 412, 416; *see Pullman-Standard v. Swint,* 1982, 456 U.S. 273, 292–93, 102 S.Ct. 1781, 1792, 72 L.Ed.2d 66, 82.

The judgment of the district court is AFFIRMED IN PART, REVERSED IN PART, AND REMANDED for further proceedings consistent with this opinion.

**8.** *See also Taylor v. Jones,* 8 Cir.1981, 653 F.2d 1193, 1200–01; *cf. Cook v. Advertiser Co.,* 5 Cir.1975, 458 F.2d 1119, 1121–22.

**9.** For a full discussion of the effect of a *prima facie* showing of discrimination, *see Reeves v. General Food Corp.,* 5 Cir.1982, 682 F.2d 515, 521–23.