George James WILLIAMS, et al., Plaintiffs-Appellants,

v.

NEW ORLEANS STEAMSHIP ASSOCIATION, et al., Defendants-Appellees.

No. 80–3886.

United States Court of Appeals, Fifth Circuit.

Oct. 8, 1982.

---

George M. Strickler, Jr., New Orleans, La., Richard B. Sobol, Abourezk, Sobol & Trister, Richard T. Seymour, Washington, D.C., for plaintiffs-appellants.

David E. Walker, New Orleans, La., for New Orleans S.S. Ass'n.

Victor H. Hess, New Orleans, La., for unions.

Seymour M. Waldman, New York City, Dennis M. Angelico, New Orleans, La., for defendants-appellees.

ON PETITIONS FOR REHEARING AND SUGGESTIONS FOR REHEARING EN BANC

(Opinion April 9, 5th Cir., 1982, 673 F.2d 742)

Before THORNBERRY, TATE and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

The petitions for rehearing are DENIED and no member of this panel nor judge in regular active service on the court having requested that the court be polled on rehearing en banc, (Rule 35 Fed. R. App.; Local Fifth Circuit Rule 16) the suggestions for rehearing en banc are DENIED.

I. Segmented Claim a Question of Law

■ In denying the motions for rehearing and the suggestions for rehearing en banc, the Court believes that there is value in commenting upon the issues urged upon the Court by the parties filing the petitions and the suggestions. This is particularly so with respect to the matter constituting the major emphasis of the assertions made. After the decision of the Court in this case, 673 F.2d 742 (5th Cir. 1982), the Supreme Court decided the case of *Pullman-Standard v. Swint,* —— U.S. ——, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). *Swint* was an employment discrimination action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The Supreme Court reversed our decision, *Swint v. Pullman-Standard,* 624 F.2d 525 (5th Cir. 1980), holding that a Court of Appeals is bound by the "clearly erroneous" rule of Fed. R. Civ. Proc. 52(a) in reviewing a district court's finding of fact whether or not the finding of fact is classified as an "ultimate fact." The Court made it clear, however, that in applying the clearly erroneous standard to the review of all findings of fact, it was not changing the standard with respect to the review of conclusions of law. The opinion of the Court said "The Court of Appeals, therefore, was quite right in saying that if a district court's findings rest on an erroneous view of the law, they may be set aside on that basis." This is precisely the situation involved in the case sub judice.

We held that our review of the district court's finding that there had not been racial discrimination was not bound by the clearly erroneous standard because it was based upon an erroneous view of the law concerning the legal validity of segmented claims. When the plaintiffs presented their grain work claim to the court, they argued that there was discrimination with respect to grain work which was distinct from other discrimination allegedly existing in the industry. The court refused to accept the claim, however, and instead converted the claim into one of industry-wide discrimination. The district court never addressed the issue of whether grain work was factually a distinct and separate category. The only statement made by the court in which its reason for rejecting the segmented claim is shown was in the minute entry of June 30, 1980, which stated, "Since he (the longshoreman) may work various types of cargo at different hours in any given week, the important thing is how he fares overall." This statement was unequivocally a statement of the law of the case and not of particular facts found.

The manner in which the district court handled plaintiffs' segmented claim was the equivalent of a dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Rather than dismiss the claim altogether, however, the court allowed the plaintiffs to try the broader claim that black longshoremen in the entire industry suffered economically as a result of alleged discrimination in this one job category. This change in the nature of the plaintiffs' claim was based entirely on the decision of the district judge that the law required that the issue of discrimination in grain work not be separately cognizable. We found this to be an error in law which is not limited to the clearly erroneous standard of review.

The *Swint* case is not implicated by this Court's opinion. We did not distinguish between ultimate and subsidiary facts, we did not even make mention of such a distinction; we did not review mixed questions of law and fact; and we did not suggest that ultimate findings might be synony-

mous with legal conclusions and therefore reviewable free of the clearly erroneous standard.

Our holding that the court operated under an erroneous view of the law raises the question of whether our conclusion that the question is one of law is correct. Petitioners contend that the inquiry into whether a job category constitutes an entity with distinct and separate characteristics is a question of fact. We are in full agreement with this assertion. Had the district court found that grain work was factually indistinguishable from other jobs we would be bound by that conclusion unless clearly erroneous. The district court did not make this finding, however. It presumed that *even if* grain work was distinct and different from other work, a claim alleging discrimination in that area only would not be cognizable. This was clearly a legal conclusion. Thus, *Swint* does not in any way trench upon our holdings in this case.

### II. Grain Work as a Separate Job Category

■ Petitioners also again challenge our conclusion that the grain work is a separate job category. As to the unique aspects of grain work, little can be added to our opinion. The petitioners obviously focus upon the fact that most longshoremen perform a variety of longshoring jobs and that grain work is simply one of those jobs. If the problem, however, is approached from the standpoint of the job rather than those who fill it, the distinctive nature of grain work is readily apparent. The parties recognized this themselves when they made a separate contract overtly setting a racial quota for grain work. Grain work is recognized as different in other ways. For example, the contract provided for an independently negotiated rate for grain work which was 20¢ per hour higher than the general hourly rate.

If we were not to view grain work as separable, we would be allowing a union and employer association openly to discriminate by contract on the basis of race so long as the industry-wide effects from other jobs tended to equalize or cancel out the discrim-

ination. There is no authority whatsoever in the law to justify such open and blatant racial discrimination in a job which the parties themselves treat as separate from others.

The cases which the parties urge do not alter this conclusion. The leading case of *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), involved two separate classifications of drivers, line drivers and city drivers. Each employee was either a line driver or a city driver, but not both. We stress that we did not rely upon *Teamsters* on the issue of separability. In fact the Supreme Court itself in that case did not even mention the problem of separability. It just assumed that the employer work force was separable. We cited the case only as proof of the fact that separability is valid within an employer's cadre of employees or an industry, and also as an example of a successful segmented suit. It is obvious that the operation of the trucking industry renders it more susceptible to segmented claims than does the operation of the longshoring industry. It does not undermine the basic principle, however, that an employer is forbidden to discriminate in one or more jobs in the company regardless of the overall facade of non-discrimination.

Both *Swint v. Pullman-Standard,* 539 F.2d 77 (5th Cir. 1976), and *EEOC v. Datapoint Corp.,* 570 F.2d 1264 (5th Cir. 1978), are cases in which the plaintiffs complained of discrimination throughout a particular plant or a particular workforce. In both of the cases the plaintiffs offered statistical evidence showing racial imbalances in small segments of the employers' workforce. We only concluded that the segmented evidence was meaningless and inadequate because the plaintiffs had lodged employer-wide claims. Those two cases are close to being the opposites of this case.

We must, therefore, reaffirm our conclusion that a separate claim of racial discrimination with respect to the grain work was legally authorized under Title VII and 42 U.S.C. § 1981 and that the district court in not allowing the separate claim made an error in law.

### III. Class Representation

■ Petitioners also challenge the adequacy of class representation. As stated in footnote 20 of our opinion, there was at least the allegation that one of the named individuals had been a grain worker or had sought grain work. The district court's opinion, 466 F.Supp. 662, 671 (E.D. La. 1979), refers to John Aaron's position as a grain worker. The district court refused to certify a plaintiff class because of lack of numerosity and failure to prove discrimination overall. The court did not find that named plaintiffs were in any way inadequate to represent a class of grain workers.

The petitioners' complaint is that none of the individuals actually testified at trial that they had personally suffered from discrimination in the allocation of grain work. This, it is argued, leads to the conclusion that they were inadequate representatives. In the first place it must be remembered that the case was tried on the basis of proving overall discrimination, not discrimination in grain work. Second, plaintiffs introduced statistical evidence showing the effects of grain work discrimination on themselves and the class.

It must be concluded that, in a major sense, the district court by its rulings cut off the development of specific testimony to isolate particular people as having engaged in grain work. The record is quite clear, by implication however, and indeed by the very argument which the plaintiffs make in trying to say that grain work is not separable, that many of the longshoremen at the New Orleans port have worked in grain gangs, and can serve as adequate class representatives of a class limited to challenging discrimination in grain work.

### IV. Finding of Racial Discrimination in Grain Work

■ Petitioners also challenge the propriety of deciding the merits of the grain work claim rather than remanding it once we found the separate claim valid. *Swint* holds that "where findings are infirm because of an erroneous view of law, a remand is the proper course *unless* the record permits only one resolution of the factual issue." 102 S.Ct. at 1792 (emphasis added). This is simply a reaffirmation of a long standing rule of which we were well aware in reaching our decision. A review of the record, particularly the statistics and the overtly discriminatory contract provision, convinced us that there was only one possible resolution of the issue. The evidence shows unmistakably that defendants discriminated purposefully and with a precise quota system on the basis of race in the allocation of grain work. A remand on that issue would be a waste of time.

■ This conclusion does not mean that there are automatically high awards of back pay available. Proof of discrimination in a class action establishes a presumption that each class member has experienced discrimination, but it does not mean that each member is entitled to back pay. To obtain a back pay award, each claimant must show (I) he or she is a member of the class; (II) that he or she was a "potential" victim of the discrimination (that he or she sought and was refused grain work or would have sought grain work but for the discriminatory practice); and (III) the factual basis for computing the back pay award. *See* C. Sullivan, M. Zimmer, & R. Richards, Federal Statutory Law of Employment Discrimination Section 9.1, pp. 516–519 (1980). The burden will be on each longshoreman to prove the particular economic loss. The record contains employment records from most of the stevedores, but the longshoremen will have to prove that he or she lost wages because of being kept out of grain work, and prove the amount of wages lost. A district court has broad discretion in conducting the so-called "Stage II" proceeding, and it is the province of the district court to formulate the remedies.

### V. Continuing Discrimination in Grain Work

■ Finally, petitioners question the propriety of our reaching the issue of discrimination in grain work after the clause was deleted from the contract. The deletion in the contract took place about two months after the trial was concluded on September

20, 1974. It is not argued that the alleged post-clause discrimination was as a matter of time beyond the scope of the claim, only that it was substantively different. However, plaintiffs original complaint was directed at the *practice* of discriminatory allocation of grain work whatever its source. The fact that the clause compelling discrimination had been deleted, standing alone, did not automatically dissolve the claim. The date that the trial was concluded is not the significant date with respect to these claims. It was nearly five years after the trial before the court issued its first opinion in the case. During those five years, motions, briefs, and evidence were submitted to the court. After the court rendered its initial opinion in 1979, it reopened the grain issue and accepted more evidence and memoranda. Plaintiffs continued to submit evidence showing that discrimination still existed in spite of the deletion of the clause, and they asked for a hearing on the issue.

Until the trial court issued its final order in 1979, it retained jurisdiction over the case and obviously was entitled to order a remedy which would solve the problem once and for all. The court could have ordered post-clause relief in its original order in 1979. But in any event it was entitled to do so in 1980 when it reopened the grain issue. At that time, the plaintiffs submitted evidence showing that the elimination of the clause had not cured the discrimination. The issue was squarely before the court. The court refused to make post-clause findings, however, because it still was in error in finding that a segmented claim was not authorized by law.

Petitioners' further assertion that the post-clause discrimination was not properly before the court because it was not subject to an EEOC charge cannot be accepted. Plaintiffs' original EEOC charge concerned the *practice* of racial discrimination in grain work, not just the existence of the grain clause. The EEOC charge, therefore, covered any racial discrimination in grain work, regardless of its source, occurring from 180 days before the charge was filed until the discrimination ended. Petitioners' reliance on *Sanchez v. Standard Brands,*

*Inc.,* 431 F.2d 455 (5th Cir. 1970), is not persuasive. In that case the EEOC complaint involved charged only sex discrimination. We held that such a charge could not serve as the basis of a Title VII claim charging racial and national origin discrimination.

Finally, on this point, we remind petitioners that plaintiffs also alleged violation of 42 U.S.C. § 1981. Even if the lack of an EEOC charge were relevant, and we find it is not, the plaintiffs still would be entitled to relief under § 1981 if they can establish individual claims.

Petitions for rehearing DENIED and suggestions for rehearing en banc DENIED.