Edward JUDIE, Plaintiff–Appellant,

v.

Darrell HAMILTON, M.D.; Donald Bodenhamer; Marvin Hart; Brenda Woodward, Defendants–Appellees.

No. 87–3870.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 15, 1988.

Decided April 18, 1989.

Robert A. Izzo, Tacoma, Wash., for plaintiff-appellant.

Robert Todd Gay, Asst. Atty. Gen., Olympia, Wash., for defendants-appellees.

Before WRIGHT, WALLACE and HUG, Circuit Judges.

WALLACE, Circuit Judge:

Judie, a black male, is employed at Western State Hospital, a Washington State institution. He brought this action under 42 U.S.C. §§ 1981, 1983, 1985(3), and Title VII, 42 U.S.C. § 2000e–2, claiming to be the victim of racial discrimination and of an improper suspension at his place of employment. Judie alleged that because of his race he has not been permitted to perform all of the supervisory duties contained in his job description. He further alleged that his supervisor and fellow employees conspired to give false testimony at a disciplinary hearing which resulted in Judie agreeing to a two-day suspension from work. The district court granted summary judgment against Judie on all claims. Judie filed this timely appeal. The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review a summary judgment independently. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law. *Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir. 1986). We affirm in part, and reverse and remand in part.

## I

Judie is employed at Western State Hospital as a Food Manager 1. The specifications for Food Manager 1, as promulgated pursuant to Washington State civil service law, Wash.Rev.Code § 41.06 *et seq.* (1972 & Supp.1989), provide that:

Duties include supervising employees and residents engaged in planning menus, ordering, storing, and maintaining inventories of foods and supplies, preparing and serving meals, and planning and preparing modified diets and menus which conform with resident medical care programs; or serves as the principal assistant to a Food Manager 3 or 4.

Judie alleges that Bodenhamer, his supervisor, has restricted Judie's supervisory responsibilities on the basis of his race. Judie states, for example, that he is not permitted to evaluate employees, or to assume the duties of the Food Manager 3 when Bodenhamer is absent. Judie claims that the previous Food Manager 1, who was white, was given considerably greater supervisory responsibilities. As evidence of Bodenhamer's racial animus, Judie cites several racially derogatory statements that Bodenhamer allegedly made concerning blacks generally and Judie in particular. Judie argues that restrictions on his supervisory responsibilities violate his right to contract under 42 U.S.C. § 1981, and discriminate in the terms, conditions, and privileges of employment in violation of Title VII, 42 U.S.C. § 2000e–2.

### A.

■ Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race" or "to limit, segregate, or classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities ... because of such individual's race...." 42 U.S.C. § 2000e–2(a). Judie argues that the ability to supervise constitutes a term, condition, or privilege of employment. He further argues that supervisory responsibilities

would provide him with experience necessary to progress in his chosen field. Thus, the denial of this experience constitutes a "limit" which would "tend to deprive [him] of employment opportunities."

Apparently relying on *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), the district court held that Judie had not stated a claim under Title VII because he had not shown that he had ever been rejected for any job or promotion. *McDonnell Douglas* is not applicable. *McDonnell Douglas* did not involve a claim of discrimination in the terms, conditions, or privileges of employment; it involved the refusal to hire on the basis of race. *McDonnell Douglas*'s requirement that rejection must be shown is not involved in Judie's claim. Thus, the district court erred in granting summary judgment on Judie's Title VII claim on this ground.

■ The Supreme Court discussed "terms, conditions, and privileges of employment" under Title VII in *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The Court stated that

[a]n employer may provide its employees with many benefits that it is under no obligation to furnish by any express or implied contract. Such a benefit, though not a contractual *right* of employment, may qualify as a "privileg[e]" of employment under Title VII. A benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free under the employment contract simply not to provide the benefit at all.

*Id.* at 75, 104 S.Ct. at 2233 (emphasis in original). We believe the reasoning of *Hishon* applies to Judie's claim. Supervisory responsibilities are part and parcel of a food manager's job at Western State Hospital. Those employees who have the opportunity to supervise are most likely to advance in their careers. The hospital is not obligated to permit Judie to assume wide supervisory responsibilities. But it cannot preclude him from exercising such

responsibilities on the basis of race. Judie presented evidence that he has been denied the benefit of exercising supervisory responsibilities, and that Bodenhamer, who did not allow him these responsibilities, possesses racial animus against him. We hold, therefore, that there is a genuine issue of material fact as to whether discrimination has been the cause of Judie's limited supervisory responsibilities.

### B.

Section 1981 provides that "[a]ll persons ... shall have the same right ... to make and enforce contracts ... and to the full and equal benefit of all laws ... as is enjoyed by white citizens." 42 U.S.C. § 1981. Judie's section 1981 and Title VII claims are premised on the same conduct: restrictions on his supervisory responsibilities. Judie does not claim to have been denied the opportunity to enter into an employment contract. Nor does he claim to have had an employment contract terminated. Rather, Judie alleges that his job description constitutes enforceable contractual rights, the benefit of which he has been denied because of race. Judie's section 1981 claim, therefore, is distinguishable from those involving discriminatory rejection or discharge from employment, where we have said that the scope of section 1981 and Title VII are coextensive. *See Jurado v. Eleven–Fifty Corp.*, 813 F.2d 1406, 1412 (9th Cir.1987); *London v. Coopers & Lybrand*, 644 F.2d 811, 818 (9th Cir.1981).

■ Similarly, we do not read *Equal Employment Opportunity Commission v. Inland Marine Industries*, 729 F.2d 1229 (9th Cir.), *cert. denied*, 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984), as mandating that Judie necessarily stated a section 1981 claim merely because he stated a Title VII claim. Inland Marine paid black employees a lower hourly wage than white employees performing the same work. The district court awarded relief to the black employees under both section 1981 and Title VII. In affirming the judgment, we limited our discussion to one issue: whether the district court's finding that Inland Marine intended to discriminate was clearly erroneous. *Id.* at 1233. On this narrow issue, we pointed out that the standards for proving a claim under section 1981 and a disparate treatment claim under Title VII are the same. *Id.* at 1233 n. 7. Implicit in our holding was that Inland Marine discriminated against its black employees in a term in their employment contract—the hourly wage. *Inland Marine* did not hold that every form of racial discrimination in employment which violates Title VII also violates section 1981. Judie can recover under section 1981 only if the terms detailed in his job description create contractual rights or constitute laws. *See* 42 U.S.C. § 1981.

■ As a threshold matter, we must decide whether state or federal law controls in determining the legal status of Judie's job description. The language of section 1981 provides no answer. In the absence of specific guidance, the Supreme Court has outlined a three-step process based on 42 U.S.C. § 1988 for borrowing an appropriate rule. *Burnett v. Grattan*, 468 U.S. 42, 47, 104 S.Ct. 2924, 2928, 82 L.Ed.2d 36 (1984).

> First, courts are to look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect." If no suitable federal rule exists, courts undertake the second step by considering application of state "common law, as modified and changed by the constitution and statutes" of the forum State. A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not "inconsistent with the Constitution and laws of the United States."

*Id.* at 47–48, 104 S.Ct. at 2927–29 (citations omitted) (brackets in original), *quoting* 42 U.S.C. § 1988.

The civil rights statutes do not provide a body of law for interpreting contracts. Moreover, we know of no federal common law of contracts for section 1981 claims. We therefore should borrow Washington state law, provided it is not inconsistent with federal law. *Adams v. McDougal,*

695 F.2d 104, 108 (5th Cir.1983) (*Adams*), a case which predates *Grattan,* does not require a different result. There, Adams, who was black, was denied a position as a deputy sheriff. The district court rejected Adams's section 1981 claim, reasoning that under state law, a deputy sheriff is a political appointee and not a contractual employee. The court concluded that Adams was not denied the right to contract. Reversing on appeal, the Fifth Circuit held that federal rather than state law controlled Adams's claim. The court read the fourteenth amendment and *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), as clearly protecting political appointees from discrimination on the basis of race. *Adams,* 695 F.2d at 107. Thus, the court relied on the third step of the three-step process for borrowing an appropriate rule: state political-appointee law was inconsistent with the Constitution and the laws of the United States. Even if we were to follow *Adams,* we find no similar inconsistency in Washington state contract law.

■ In *Washington Federation of State Employees v. State,* 101 Wash.2d 536, 682 P.2d 869 (1984), the Washington Supreme Court held that amendments to the state civil service laws did not violate the Washington Constitution's right to contract clause. The amendments affected matters of compensation, layoffs, and reemployment of public employees. The court reasoned that the terms of public employment, other than pension rights, do not create contractual expectancies. Rather, they are part of a system of personnel administration. 682 P.2d at 872; *see also Greig v. Metzler,* 33 Wash.App. 223, 653 P.2d 1346, 1350 (1982) (terms and conditions of public employment are not contractual). If the terms of public employment affecting compensation, layoffs, and reemployment do not create contractual expectancies, then we do not believe that Judie's job description creates contractual expectancies either. Judie, therefore, has not established a cognizable claim for violation of the right to contract under section 1981.

■ Judie also argues that he has been denied "the full and equal benefit of all laws." Judie's job description, however, is not a law. These specifications are not included in the Washington Administrative Code. Judie, therefore, has not established that he was denied the full and equal benefit of the laws. The district court properly granted summary judgment against Judie on his section 1981 claims.

II

■ Although it is not clear from his brief, Judie seems to argue that his two-day disciplinary suspension from work was improper and thus establishes a cause of action under sections 1983 and 1985(3). He asserts that the suspension violated his constitutional right to freedom of expression and right not to be deprived of liberty and property without due process of law. Judie claims to be the victim of a retaliatory conspiracy between his supervisor, Bodenhamer, and fellow employees to give false testimony at a disciplinary hearing which resulted in his agreement to settle the dispute.

In May 1982, Judie and a co-worker reported to the hospital superintendent that they had observed Bodenhamer stealing food from the hospital kitchen. Following an investigation, Bodenhamer was cleared of the charges. In August 1983, Bodenhamer issued three personal conduct reports charging Judie with various improprieties. Two of the reports were dropped for untimeliness. Based on the remaining report, the hospital recommended that Judie be suspended for seven days. Judie appealed this sanction, and a formal administrative hearing was held. In the middle of the hearing following the testimony of several employees, Judie and the Hospital negotiated a settlement. In exchange for withdrawing the appeal, Judie agreed to accept a two-day suspension. Judie now claims that Bodenhamer initiated these disciplinary proceedings in retaliation for Judie's "whistle blowing" against him.

The district court held that Judie's claim that his two-day suspension violated his civil rights was barred by his agreement to settle the dispute and withdraw the admin-

istrative appeal. For the settlement to bar Judie's civil rights claims, it must contain a valid release of those claims. "A release of civil rights claims must be voluntary, deliberate, and informed." *Salmeron v. United States*, 724 F.2d 1357, 1361 (9th Cir.1983), *citing Jones v. Taber*, 648 F.2d 1201, 1203 (9th Cir.1981) (*Taber*). The hospital has the burden of establishing the validity of a release. *Taber*, 648 F.2d at 1203.

Judie's agreement was apparently never formally reduced to writing. The record contains only the hearing examiner's order dismissing the appeal. We find nothing in the order indicating that Judie intended to release his civil rights claims against the hospital. Indeed, the order is void of any reference to civil rights claims that Judie might have. The hospital offered no other evidence to show that Judie deliberately, voluntarily, and knowingly released his civil rights claims. Thus, we conclude that the hospital did not satisfy its burden. The district court therefore erred in holding that the settlement barred Judie's section 1983 and 1985(3) claims. Genuine issues of material fact remain as to these claims.

Judie will recover his costs.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.