John E. PELOZA, Plaintiff–Appellant,

v.

CAPISTRANO UNIFIED SCHOOL DISTRICT; Board of Trustees of the Capistrano Unified School District; Paul B. Haseman; Crystal Kochendorfer; Marlene M. Draper; Annette B. Gude; Kathryn I. Itzel; E.G. Kopp; A. Edward Westberg; Jerome R. Thornsley; William D. Eller; Geraldine Jaffe; Thomas R. Anthony; Ross Velderraine; James Corbett; Paul Pflueger; Ray Panici; Tim Dunn; William Redding, Defendants–Appellees.

John E. PELOZA, Plaintiff–Appellant,

v.

CAPISTRANO UNIFIED SCHOOL DISTRICT; Board of Trustees of the Capistrano Unified School District; Paul B. Haseman; Crystal Kochendorfer; Marlene M. Draper; Annette B. Gude; Kathryn I. Itzel; E.G. Kopp; A. Edward Westberg; Jerome R. Thornsley, et al., Defendants–Appellees.

Nos. 92–55228, 92–55644.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 1993.

Filed July 25, 1994.

Opinion Withdrawn Sept. 20, 1994.

Decided Oct. 4, 1994.

Cyrus Zal, Folsom, CA, for plaintiff-appellant.

David C. Larsen and Jeffrey Wertheimer, Rutan & Tucker, Costa Mesa, CA, for defendants-appellees.

Before: FLETCHER, POOLE and THOMPSON, Circuit Judges.

Per Curiam; Partial Concurrence and Partial Dissent by Judge POOLE.

## PER CURIAM:

John E. Peloza is a high school biology teacher. He sued the Capistrano Unified School District and various individuals connected with the school district under 42 U.S.C. § 1983. He alleges in his complaint that the school district requires him to teach "evolutionism" and that evolutionism is a religious belief system. He alleges this requirement violates his rights under the (1) Free Speech Clause of the First Amendment; (2) Establishment Clause of the First Amendment; (3) Due Process Clause of the Fourteenth Amendment; and (4) Equal Protection Clause of the Fourteenth Amendment.[1]

He also alleges the defendants conspired to violate these constitutional rights and attempted by harassment and intimidation to force him to teach evolutionism. He alleges they did this because they have a class-based animus against practicing Christians, a class of which he is a member, in violation of 42 U.S.C. § 1985(3).

He also alleges state law claims for violation of California's Tom Bane Civil Rights Act, Cal.Civ.Code § 52.1 (which provides a cause of action for interference with an individual's enjoyment of rights secured by the United States or California Constitution or by federal or state law), and for intentional infliction of emotional distress.

The district court dismissed the federal claims for failure to state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). The court then dismissed the state claims for lack of jurisdiction. The court also determined that the action was frivolous. Relying on Rule 11 of the Federal Rules of Civil Procedure and 18 U.S.C. § 1988, the court ordered Peloza and his attorney to pay approximately $32,000 to the defendants for their attorney fees and costs.

Peloza appeals. We have jurisdiction under 28 U.S.C. § 1291. We affirm, except as to attorneys' fees.

## THE ALLEGATIONS OF THE COMPLAINT

The following summarizes the allegations of Peloza's complaint:

Peloza is a biology teacher in a public high school, and is employed by the Capistrano Unified School District. He is being forced by the defendants (the school district, its trustees and individual teachers and others) to proselytize his students to a belief in "evolutionism" "under the guise of [its being] a valid scientific theory." Evolutionism is an historical, philosophical and religious belief system, but not a valid scientific theory. Evolutionism is one of "two world views on the subject of the origins of life and of the universe." The other is "creationism" which also is a "religious belief system." "The belief system of evolutionism is based on the assumption that life and the universe evolved randomly and by chance and with no Creator involved in the process. The world view and belief system of creationism is based on the assumption that a Creator created all life and the entire universe." Peloza does not wish "to promote either philosophy or belief system in teaching his biology class." "The general acceptance of ... evolutionism in academic circles does not qualify it or validate it as a scientific theory." Peloza believes that the defendants seek to dismiss him due to his refusal to teach evolutionism. His first amendment rights have been abridged by interference with his right "to teach his students to differentiate between a philosophical, religious belief system on the one hand and a true scientific theory on the other."

Peloza further alleges he has been forbidden to discuss religious matters with students the entire time that he is on the school campus even if a conversation is initiated by a student and the discussion is outside of class time.

He also alleges that the defendants have conspired to destroy and damage his profes-

---

1. On appeal, Peloza abandoned his equal protection argument.

sional reputation, career and position as a public school teacher. He has been reprimanded in writing for proselytizing students and teaching religion in the classroom. His inquiries as to whether he is being required to teach evolution as "fact" or "as the only valid scientific theory" have not been answered directly. He has not taught creationism in his classroom. He has been wrongly accused in the school newspaper and in the public press of teaching religion in his science class. He has been harassed by the defendant teachers and has received a formal written reprimand from defendant Thomas R. Anthony, the school principal, wrongly accusing him of proselytizing his students and teaching religion in the classroom, directing him to teach evolution as the only valid scientific theory, and forbidding him from teaching creationism as a valid scientific theory. Anthony further directed him not to discuss religion or attempt to convert students to Christianity while on campus. He has been criticized in a petition signed by faculty members for threatening litigation over the rights of faculty members to speak fully to the news media and each other.

## STANDARDS OF REVIEW

We review do novo the grant of a Rule 12(b)(6) motion. *Oscar v. University Students Co-operative Ass'n*, 965 F.2d 783, 785 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992). We review the award of attorney fees for abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990) (under Fed.R.Civ.P. 11); *Benigni v. City of Hemet*, 879 F.2d 473, 480 (9th Cir.1988) (under 42 U.S.C. § 1988).

## DISCUSSION

### I

### The Section 1983 Claim

A. The Establishment Clause

■ To withstand an Establishment Clause challenge,[2] a state statute, policy or

action (1) must have a secular purpose; (2) must, as its primary effect, neither advance nor inhibit religion; and (3) must not foster an excessive government entanglement with religions. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971).

Peloza's complaint alleges that the school district has violated the Establishment Clause "by pressuring and requiring him to teach evolutionism, a religious belief system, as a valid scientific theory." Complaint at 19–20. Evolutionism, according to Peloza, "postulates that the 'higher' life forms ... evolved from the 'lower' life forms ... and that life itself 'evolved' from non-living matter." *Id.* at 2. It is therefore "based on the assumption that life and the universe evolved randomly and by chance and with no Creator involved in the process." *Id.* Peloza claims that evolutionism is not a valid scientific theory because it is based on events which "occurred in the non-observable and non-recreatable past and hence are not subject to scientific observation." *Id.* at 3. Finally, in his appellate brief he alleges that the school district is requiring him to teach evolutionism not just as a theory, but rather as a fact.

■ Peloza's complaint is not entirely consistent. In some places he seems to advance the patently frivolous claim that it is unconstitutional for the school district to require him to teach, as a valid scientific theory, that higher life forms evolved from lower ones. At other times he claims the district is forcing him to teach evolution as fact. Although possibly dogmatic or even wrong, such a requirement would not transgress the establishment clause if "evolution" simply means that higher life forms evolved from lower ones.

Peloza uses the words "evolution" and "evolutionism" interchangeably in the complaint. This is not wrong or imprecise for,

2. The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion...." The Fourteenth Amendment incorporates the Es-
tablishment Clause's prohibitions against offending state action as well. *Board of Education v. Pico*, 457 U.S. 853, 864, 102 S.Ct. 2799, 2806–07, 73 L.Ed.2d 435 (1982).

indeed, they are synonyms.[3] Adding "ism" does not change the meaning nor magically metamorphose "evolution" into a religion. *"Evolution"* and *"evolutionism"* define a biological concept: higher life forms evolve from lower ones. The concept has nothing to do with *how* the universe was created; it has nothing to do with whether or not there is a divine Creator (who did or did not create the universe or did or did not plan evolution as part of a divine scheme).

■ On a motion to dismiss we are required to read the complaint charitably, to take all well-pleaded facts as true, and to assume that all general allegations embrace whatever specific facts might be necessary to support them. *Lujan v. Nat'l Wildlife Federation,* 497 U.S. 871, 889, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990); *Abramson v. Brownstein,* 897 F.2d 389, 391 (9th Cir.1990).

Charitably read, Peloza's complaint at most makes this claim: the school district's actions establish a state-supported religion of evolutionism, or more generally of "secular humanism." *See* Complaint at 2–4, 20. According to Peloza's complaint, all persons must adhere to one of two religious belief systems concerning "the origins of life and of the universe:" evolutionism, or creationism. *Id.* at 2. Thus, the school district, in teaching evolutionism, is establishing a state-supported "religion."

We reject this claim because neither the Supreme Court, nor this circuit, has ever held that evolutionism or secular humanism are "religions" for Establishment Clause purposes. Indeed, both the dictionary definition of religion[4] and the clear weight of the case-law[5] are to the contrary. The Supreme Court has held unequivocally that while the belief in a divine creator of the universe is a religious belief, the scientific theory that higher forms of life evolved from lower forms is not. *Edwards v. Aguillard,* 482 U.S. 578, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987) (holding unconstitutional, under Establishment Clause, Louisiana's "Balanced Treatment for Creation–Science and Evolution–Science in Public School Instruction Act").

Peloza would have us accept his definition of "evolution" and "evolutionism" and impose his definition on the school district as its own, a definition that cannot be found in the dictionary, in the Supreme Court cases, or anywhere in the common understanding of the words. Only if we define "evolution" and "evolutionism" as does Peloza as a concept that embraces the belief that the universe came into existence without a Creator might he make out a claim. This we need not do. To say red is green or black is white does not make it so. Nor need we for the purposes of a 12(b)(6) motion accept a made-up definition of "evolution." Nowhere does Peloza point to anything that conceivably suggests that the school district accepts anything other than the common definition of "evolution" and "evolutionism." It simply required him as a biology teacher in the public schools of California to teach "evolution." Peloza nowhere says it required more.

The district court dismissed his claim, stating:

Since the evolutionist theory is not a religion, to require an instructor to teach this theory is not a violation of the Establishment Clause.... Evolution is a scientific theory based on the gathering and studying of data, and modification of new data. It is an established scientific theory which is used as the basis for many areas of

---

3. *See* Webster's Third New Int'l Dictionary (G. & C. Merriam Co. Springfield, MA. 1969), p. 789 ("evolutionism: 1: a theory of evolution (as in philosophy, biology, or sociology)—see Darwinism 2: adherence to or belief in evolution esp. of living beings").

4. According to Webster's, religion is the "belief in and reverence for a supernatural power accepted as the creator and governor of the universe." *Webster's II New Riverside University Dictionary* 993 (1988).

5. *See Smith v. Board of School Com'rs of Mobile County,* 827 F.2d 684, 690–95 (11th Cir.1987) (refusing to adopt district court's holding that "secular humanism" is a religion for Establishment Clause purposes; deciding case on other grounds); *United States v. Allen,* 760 F.2d 447, 450–51 (2d Cir.1985) (quoting Tribe, *American Constitutional Law* 827–28 (1978), for the proposition that, while "religion" should be broadly interpreted for Free Exercise Clause purposes, "anything 'arguably non-religious' should not be considered religious in applying the establishment clause").

science. As scientific methods advance and become more accurate, the scientific community will revise the accepted theory to a more accurate explanation of life's origins. Plaintiff's assertions that the teaching of evolution would be a violation of the Establishment Clause is unfounded. *Id.* at 12–13. We agree.

**B. Free Speech**

 Peloza alleges the school district ordered him to refrain from discussing his religious beliefs with students during "instructional time," and to tell any students who attempted to initiate such conversations with him to consult their parents or clergy. He claims the school district, in the following official reprimand, defined "instructional time" as any time the students are on campus, including lunch break and the time before, between, and after classes:

> You are hereby directed to refrain from any attempt to convert students to Christianity or initiating conversations about your religious beliefs during instructional time, which the District believes includes any time students are required to be on campus as well as the time students immediately arrive for the purposes of attending school for instruction, lunch time, and the time immediately prior to students' departure after the instructional day.

Complaint at 16. Peloza seeks a declaration that this definition of instructional time is too broad, and that he should be allowed to participate in student-initiated discussions of religious matters when he is not actually teaching class.[6]

The school district's restriction on Peloza's ability to talk with students about religion during the school day is a restriction on his right of free speech. Nevertheless, "the Court has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the

schools." *Tinker v. Des Moines Indep. Community School Dist.,* 393 U.S. 503, 506–07, 89 S.Ct. 733, 737, 21 L.Ed.2d 731 (1969). "[T]he interest of the State in avoiding an Establishment Clause violation 'may be [a] compelling' one justifying an abridgement of free speech otherwise protected by the First Amendment...." *Lamb's Chapel v. Center Moriches Union Free School Dist.,* —— U.S. ——, ——, 113 S.Ct. 2141, 2148, 124 L.Ed.2d 352 (1993) (quoting *Widmar v. Vincent,* 454 U.S. 263, 271, 102 S.Ct. 269, 275, 70 L.Ed.2d 440 (1981)). This principle applies in this case. The school district's interest in avoiding an Establishment Clause violation trumps Peloza's right to free speech.

While at the high school, whether he is in the classroom or outside of it during contract time, Peloza is not just any ordinary citizen. He is a teacher. He is one of those especially respected persons chosen to teach in the high school's classroom. He is clothed with the mantle of one who imparts knowledge and wisdom. His expressions of opinion are all the more believable because he is a teacher. The likelihood of high school students equating his views with those of the school is substantial. To permit him to discuss his religious beliefs with students during school time on school grounds would violate the Establishment Clause of the First Amendment. Such speech would not have a secular purpose, would have the primary effect of advancing religion, and would entangle the school with religion. In sum, it would flunk all three parts of the test articulated in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). *See Roberts v. Madigan,* 921 F.2d 1047, 1056–58 (10th Cir.1990) (teacher could be prohibited from reading Bible during silent reading period, and from stocking two books on Christianity on shelves, because these things could leave students with the impression that Christianity was officially sanctioned), *cert. denied,* —— U.S. ——, 112 S.Ct. 3025, 120 L.Ed.2d 896 (1992).

---

6. The dissent claims this interpretation impermissibly narrows the scope of Peloza's complaint. However, the very sentence quoted by the dissent, Dissent at p. 12064, focuses not on the definition of "religious matters," but on the definition of "instructional time." We agree with the dissent that a complaint must be read charitably at the Rule 12(b)(6) stage. However, a reviewing court need not go so far as to invent claims not within the reasonable intendment of the complaint.

The district court did not err in dismissing the part of Peloza's section 1983 claim that was predicated on an alleged violation of his right to free speech under the First Amendment.

## C. Due Process

■ Peloza alleges that some of the defendants made defamatory statements to and about him, and that these statements damaged his reputation. He alleges this was state action which violated his right to due process under the Fourteenth Amendment.

To state a claim under 42 U.S.C. § 1983 based on an alleged violation of due process, Peloza must allege a deprivation of a life, liberty or property interest within the meaning of the Fourteenth Amendment's Due Process Clause. *Board of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972). The injury Peloza alleges here is to his reputation. An injury to reputation does not deprive Peloza of any interest in life. The district court concluded that it did not deprive him of a liberty or a property interest. Peloza concedes that his interest in his reputation is not a property interest. He argues, however, that the alleged injury to his reputation deprived him of a liberty interest sufficient to state a claim under section 1983 based on a due process violation. We disagree.

In *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), the Court laid to rest the notion that reputation alone is a sufficient interest to give rise to due process rights. In that case, Siegert, a psychologist working for the federal government, resigned from his job in Washington, D.C. to avoid being fired. *Id.* at 227–29, 111 S.Ct. at 1791. He applied for a job in an Army hospital in Germany which required that he be "credentialed." This involved asking his former employer for information about him. *Id.* His former supervisor responded to the request for information with a letter which said "that he 'consider[ed] Dr. Siegert to be both inept and unethical, perhaps the least trustworthy individual I have supervised in my thirteen years [here].'" *Id.* The Court held that

Siegert had no cause of action for deprivation of liberty under the Due Process Clause because "injury to reputation by itself was not a 'liberty' interest...." *Id.* at 233, 111 S.Ct. at 1794; *see also Paul v. Davis*, 424 U.S. 693, 712, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976); *Cooper v. Dupnik*, 924 F.2d 1520, 1532 (9th Cir.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 407, 121 L.Ed.2d 332 (1992); Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law* § 17.4(d) (1992).

Like Dr. Siegert's, Peloza's allegations of injury to his reputation are insufficient to support a claim for deprivation of a liberty interest under section 1983. Peloza's citations to dicta in pre-*Paul* cases that suggest reputation alone is protected in this context are unavailing.

The district court did not err in dismissing the part of Peloza's section 1983 claim which was predicated on an alleged violation of his right to due process under the Fourteenth Amendment.

## II

### The Section 1985(3) Claim

In support of his claim under 42 U.S.C. § 1985(3), Peloza alleges in his complaint that the defendants conspired to deprive him of equal protection of the laws under the Fourteenth Amendment; free speech under the First and Fourteenth Amendments; life, liberty "or" property without due process of law under the Fifth and Fourteenth Amendments; and the free exercise of his religious beliefs under the First and Fourteenth Amendments. In addition, he alleges the defendants violated his rights under the Establishment Clause of the First and Fourteenth Amendments. He alleges that the defendants engaged in this conspiracy pursuant to their class-based animus against practicing Christians.[7]

As we stated previously, Peloza's allegations are insufficient to support a claim based on a violation of his constitutional rights of free speech and due process. Accordingly, his allegations of a conspiracy to violate these

---

7. As with his equal protection claim under section 1983, Peloza appears to have dropped his equal protection claim from his appeal to this court.

constitutional rights do not state a claim. *See Great American Fed. S & L Ass'n v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979) ("Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates.").

Because Peloza failed to allege a conspiracy to do something that would violate his free speech or due process rights, or his rights under the Establishment Clause, his section 1985(3) claim predicated on a violation of these rights fails. We do not decide whether free speech, due process rights, or Establishment Clause rights, fall within the protection of section 1985(3).[8]

### III

#### State Law Claims

Peloza's state law claims were pendent to his federal claims and were dismissed for lack of jurisdiction when the district court dismissed all the federal claims. We affirm their dismissal.

### IV

#### Attorney Fees

Peloza contends the district court erred in awarding the defendants costs and attorney fees of approximately $32,000. This award, made by the district court under Federal Rule of Civil Procedure 11 and 42 U.S.C. § 1988, was appropriate if Peloza's complaint is frivolous. *Christianburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 422, 98 S.Ct. 694, 700–01, 54 L.Ed.2d 648 (1978) (under civil rights statutes); *Townsend v. Holman Con-*

*sulting Corp.,* 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc) (under Fed.R.Civ.P. 11).

■ Peloza's complaint is not entirely frivolous. Some of the issues he raises present important questions of first impression in this circuit. His free speech claim involves substantial questions and requires the balancing of rights of free speech against the Establishment Clause, a matter upon which the Supreme Court recently commented in *Lamb's Chapel.* Accordingly, we reverse the district court's award of attorney fees and costs to the defendants.

### V

#### CONCLUSION

The district court correctly dismissed Peloza's section 1983 claim based on allegations of a violation of his constitutional rights under the Establishment Clause and his rights to free speech and due process. He failed to allege sufficient facts to state a violation of these rights. The district court also correctly dismissed Peloza's claim under 42 U.S.C. § 1985(3), because he failed to allege facts sufficient to state a violation of those rights, assuming, without deciding, that they fall within the protection of section 1985(3).

We affirm the dismissal of the complaint. We reverse the district court's award of attorney fees to the defendants.

The parties shall bear their own costs on appeal.

#### AFFIRMED IN PART; REVERSED IN PART.

---

8. *See United Brotherhood of Carpenters & Joiners of America, Local 610, AFL–CIO v. Scott,* 463 U.S. 825, 830, 103 S.Ct. 3352, 3357, 77 L.Ed.2d 1049 (1983) (free speech rights protected by section 1985 so long as the state is involved in the conspiracy alleged). As to due process rights, there appears to be some confusion within this circuit. Older cases have stated that section 1985(3) provides no remedy for violation of due process rights, *Cohen v. Norris,* 300 F.2d 24, 28 (9th Cir.1962) (dicta); *Mitchell v. Greenough,* 100 F.2d 184, 187 (9th Cir.1938) (holding), *cert. denied,* 306 U.S. 659, 59 S.Ct. 788, 83 L.Ed. 1056 (1939). In some more recent cases, we have allowed claims of due process violations to pro-

ceed under section 1985(3) without comment. *See Judie v. Hamilton,* 872 F.2d 919, 924 (9th Cir.1989); *Padway v. Palches,* 665 F.2d 965, 969 (9th Cir.1982). *See Taylor v. Gilmartin,* 686 F.2d 1346, 1358 (10th Cir.1982) (First Amendment freedom of religion protected by section 1985(3)), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 *and cert. denied,* 463 U.S. 1229, 103 S.Ct. 3570, 77 L.Ed.2d 1411 (1983); *Action v. Gannon,* 450 F.2d 1227, 1234 (8th Cir.1971) (same); *Cooper v. Molko,* 512 F.Supp. 563, 570 (N.D.Cal.1981) (same); *but see Africa v. Anderson,* 510 F.Supp. 28, 30 (E.D.Penn.1980) (freedom of religion not protected by section 1985(3)).

POOLE, Circuit Judge, concurring in part and dissenting in part:

I am in agreement with the majority's resolution of John Peloza's Establishment Clause and Due Process Clause claims. However, because I believe we can dismiss Peloza's free speech claims only by turning a deaf ear to the procedural posture of this case, I respectfully dissent from parts I.B and II of the majority opinion.

## I

Schoolteacher John Peloza seeks a declaratory judgment permitting him to "respond[ ] to student-initiated inquiries ... regarding religion" during contract time. The majority opinion concludes that if Peloza's discussions would constitute an establishment of religion, the District may permissibly limit those discussions, even though such limitations restrict Peloza's free speech. With this I have no quarrel. But the majority's premise is that any discussions Peloza might have *do* constitute such an establishment, and I am unpersuaded that we may reach such a conclusion in the case's present posture.

This is an appeal from the granting of a Rule 12(b)(6) motion. As such, we are not permitted to affirm dismissal of the complaint "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Love v. United States,* 915 F.2d 1242, 1245 (9th Cir.1989). At this stage, we know almost nothing about what past or future discussions might involve. I can imagine a wide range of circumstances and questions "regarding religion" which Peloza could permissibly answer without violating the Establishment Clause. For example, a student might come to a teacher during lunch and ask about Malcolm X or Martin Luther King's religious beliefs, and how and why they evolved, or about the origins of Islam, or what the seven great religions of the world were. Such questions would certainly be "regarding religion," student-initiated, and during contract time. As such, they fall within the class of discussions Peloza seeks to be permitted, yet it is hard to see how the descriptive role a teacher would have in re-

sponding to these questions would work any violation of the Establishment Clause.

The majority holding only makes sense if we presume that we know what kinds of questions are being asked and what kinds of answers Peloza would give. In the posture of this case, where we must reverse if there are any facts Peloza could conceivably prove which would entitle him to relief, this is a presumption we are forbidden from making. As a result, the majority holding means that *any* response to a student-initiated inquiry "regarding religion" during contract time, other than "Ask someone else," works a violation of the Establishment Clause. I cannot join in such a broad legal holding, and indeed the case law forbids it:

> In each case, the inquiry calls for line-drawing; no fixed, *per se* rule can be framed. The Establishment Clause like the Due Process Clauses is not a precise, detailed provision in a legal code capable of ready application.... The line between permissible relationships and those barred by the Clause can no more be straight and unwavering than due process can be defined in a single stroke or phrase or test. The Clause erects a "blurred, indistinct, and variable barrier depending on all the circumstances of a particular relationship." *Lemon [v. Kurtzman* ], 403 U.S. [602, 614, 91 S.Ct. 2105, 2112, 29 L.Ed.2d 745 (1971) ].

*Lynch v. Donnelly,* 465 U.S. 668, 678–79, 104 S.Ct. 1355, 1362, 79 L.Ed.2d 604 (1984).

*Roberts v. Madigan,* 921 F.2d 1047 (10th Cir.1990), upon which the majority relies, is not to the contrary. There, the court had before it a host of particulars: the conduct at issue involved a teacher displaying religious books and a poster reading "You have only to open your eyes to see the hand of God" in the classroom. *Id.* at 1049. That court also had the benefit of a district court factual determination that the conduct "created the appearance that [the teacher] was seeking to advance his religious views." *Id.* As this case stands, we know far less.

The majority impermissibly attempts to narrow the scope of Peloza's complaint by relying on a written warning from the school district which Peloza has incorporated into

the complaint. The letter forbids Peloza from "attempt[ing] to convert students to Christianity or initiating conversations about your religious beliefs." Complaint at ¶ 45. Were this all that the complaint said, I would have little trouble joining the majority. But the complaint alleges more; it contends that "the school district ... has directed Plaintiff not to discuss any religious matters during any of this 'instructional time,' including student-initiated conversations regarding religion during lunch, class breaks, and before and after school hours." Complaint at ¶ 3. This allegation we must take as true. If all that lies behind it is the far narrower warning the majority cites, then Peloza's case will not be long for this world. But we may not presume that this is so.

I believe that, in a broad range of cases, the majority and I could agree about what would or would not constitute a violation of the Establishment Clause. But the majority errs in presuming to know that what is at stake here is Peloza's right to "discuss[ ] his religious beliefs" with students. In doing so, it ignores the fact that this is a Rule 12(b)(6) case. More generally, it gives short shrift to the possibility that we may well be limiting free speech more broadly than the state's compelling interest in avoiding an establishment of religion would warrant.

## II

I join in the majority's part II insofar as it dismisses Peloza's § 1985(3) due process and Establishment Clause claims based on his failure to properly allege a violation of these rights. However, because I conclude that Peloza's free speech claim should not have been dismissed, I would also remand, rather than dismiss, his § 1985(3) claim based on alleged free speech violations.

## III

Religion has been used to justify the suppression of speech for centuries. *See Everson v. Board of Ed.*, 330 U.S. 1, 8–10, 67 S.Ct. 504, 507–09, 91 L.Ed. 711 (1947). With the development of a vigorous First Amendment jurisprudence, we have quelled some of the worst abuses. But points of tension remain. We must thus remain vigilant to ensure that in our rush to preserve certain fundamental rights, we do not trample others. Caution is of the essence; only through a methodical and fact-specific jurisprudence can we hope to achieve a proper accommodation.

For the reasons stated above, I respectfully dissent.