Jimmy **RAMIREZ**, Plaintiff—
Appellant,

v.

William **KROONEN**, et al.,
Defendants—Appellees.

No. 01–55994.
D.C. No. CV–99–07681–GHK.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 11, 2002.

Decided Aug. 12, 2002.

Before HUG, FARRIS and SILVERMAN, Circuit Judges.

### MEMORANDUM *

Plaintiff Jimmy Ramirez contends that the College of the Desert's refusal to promote him to the position of Custodial Supervisor constituted intentional discrimination based on his Hispanic national origin/ethnicity in violation of 42 U.S.C. §§ 1981 and 1983. Defendants are employees and officials of the College and the Desert Community College District who created, implemented, or ratified the job description for Custodial Supervisor.[1]

The district court granted judgment in favor of the defendants on both claims. We affirm in part, reverse in part, and remand this case for trial as to a single defendant.

### I

The pivotal question is whether Ramirez has presented sufficient evidence against any defendant to create a triable issue of fact about whether the change in the job description might be the result of intentional discrimination.

The district court dismissed Ramirez's § 1981 claim on the pleadings because it found that, as a statutory employee, he could not show the contractual relationship with the College necessary to maintain a § 1981 action. The court granted summary judgment in favor of the defendants on the § 1983 claim because it found that Ramirez was unable to raise an issue of fact about whether the defendants' legitimate, nondiscriminatory reason for rejecting his application was a pretext for discrimination.

### II

We review *de novo* the grants of summary judgment and judgment on the pleadings. *See Clicks Billiards Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir.2001); *Marx v. Loral Corp.*, 87 F.3d 1049, 1053 (9th Cir.1996).

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. In 2000, the district court approved a stipulation between the parties that dismissed the College and the District from the case. There are ten defendants remaining: William Kroonen, College Superintendent/President; Jo Ann Higdon, College Chief of Business Officer; Jackie Weiss, Director of Personnel; Barbara Creson, Personnel Specialist, who prepared the Custodial Supervisor notice of vacancy at issue and screened out Ramirez's application; Paul O'Donnell, Director of Maintenance and Operations until 1998; and Terry Green, Charles Hayden, Ray House, Jackie Suitt, and Bonnie Stefen, who comprise the Board of Trustees for the District.

### A. Section 1983

A plaintiff may bring a § 1983 claim to challenge action committed under color of state law that amounts to a deprivation of federal constitutional or statutory rights. 42 U.S.C. § 1983; *see Sischo–Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1112 (9th Cir.1991). Ramirez alleges that the defendants violated his rights to equal protection by discriminating against him on the basis of national origin. "In order to prove discrimination in violation of § 1983, a plaintiff must demonstrate that the defendants acted with the intent to discriminate. A plaintiff who fails to establish intentional discrimination for purposes of Title VII ... fails to establish intentional discrimination for purposes of § 1983." *Sischo–Nownejad,* 934 F.2d at 1112; *see Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1180 & n. 11 (9th Cir.1998); *FDIC v. Henderson,* 940 F.2d 465, 471 (9th Cir.1991).

Ramirez's claim of disparate treatment is thus determined by the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). He must first establish a *prima facie* case of discrimination. *Id.* at 802; *Cordova v. State Farm Ins. Cos.,* 124 F.3d 1145, 1148 (9th Cir. 1997). If he succeeds in doing so, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for their employment decision. If the defendants provide such a reason, then in order to prevail, Ramirez must demonstrate that this reason is pretextual. *See Cordova,* 124 F.3d at 1148.

#### 1. *Prima Facie* Case

To establish a *prima facie* case, Ramirez must offer evidence that "give[s] rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). One way to do this is through direct evidence of discriminatory intent. *See Cordova,* 124 F.3d at 1148. The other way is through circumstantial evidence that satisfies the *McDonnell Douglas* framework, under which Ramirez must show (1) he belongs to a protected class, (2) he was qualified for the position, (3) he was rejected despite his qualifications, and (4) similarly situated persons in a non-protected class were treated more favorably. *See McDonnell Douglas,* 411 U.S. at 802–03; *Aragon v. Republic Silver State Disposal,* 292 F.3d 654, 658 (9th Cir.2002); *Cordova,* 124 F.3d at 1148. "[T]he requisite degree of proof necessary to establish a prima facie case ... on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994).

As the district court noted, Ramirez has created a triable issue of fact as to whether he has established a *prima facie* case of discrimination. The parties agree that Ramirez belongs to a protected class, was rejected despite his qualifications, and that a similarly situated person in a non-protected class was treated more favorably. They disagree only about whether Ramirez was qualified to be Custodial Supervisor. There is ample evidence that, in the absence of the challenged educational requirement, he was well-qualified for the position, and demonstrably more qualified than the person actually hired.

First, Ramirez has an exemplary work history. Prior to joining the College as a custodian, Ramirez had eleven years of supervisory experience. He has been a College custodian since 1979, and for eleven years served as the "right-hand man" for Custodial Supervisor Ed Leveau. From March until October 1998, during a

protracted illness that led to Leveau's death, Ramirez assumed Leveau's duties, serving first as "Lead Custodian," and later as "Supervisor Custodian," the latter of which resulted in a commensurate pay increase. After his application was rejected, Ramirez also replaced Leveau on the committee that interviewed applicants, though Leveau continued to screen applications. A white male, Chris Alm, was eventually selected for the position. Ramirez trained Alm and remained Supervisor Custodian for a month past Alm's start date.

Second, it is arguable that Ramirez is much better qualified for the position than Alm. Alm had no experience as a custodian, and the only custodial equipment he had actually used was a vacuum. Although the District read the educational requirement strictly, it appears to have read the three years experience in custodial services loosely: Alm had previously managed a shoe store, a shoe department in a department store, and later became an area manager for a department store. His only "custodial experience" included, among other duties, supervising a single custodian. That one custodian didn't do the bulk of the custodial work since an outside cleaning crew, that Alm didn't supervise, was brought into the store. The full-time custodian mostly policed the store after the cleaning crew did the work, checked the restrooms every few hours, and emptied trash several times a day. As Custodial Supervisor for the District, Alm's job now is to supervise eleven custodians one-hundred percent of the time.

Third, there is no indication that the new minimum qualifications for the Custodial Supervisor position led to a concomitant increase in actual responsibilities.

Fourth, as noted by the district court, there is evidence that former Custodial Supervisor Leveau made a number of discriminatory remarks about Hispanics[2] and stated that he preferred to supervise an all-white crew. Ramirez alleges that Leveau went so far as to say that he had approached defendant Jackie Weiss about adding a high school diploma requirement so that blacks and Mexicans would be screened out from all positions, including custodial positions. In 1991, without explanation or reference to a classification/compensation study, the strict educational requirement was added to the notice of vacancy for the position of *Custodian.* Furthermore, Ewing, in conducting the study leading to the change in the *Custodial Supervisor* job description, may have interviewed Leveau because the consultant interviewed at least one person in every job classification, and Leveau was the only Custodial Supervisor.

This evidence strongly suggests a triable issue of fact about whether Ramirez established a *prima facie* case of discrimination.

## 2. Legitimate, Nondiscriminatory Reason

The defendants submit that Ramirez's application was screened out because he did not have one of the minimum qualifications, a high school diploma or G.E.D. The defendants have articulated a legitimate, nondiscriminatory reason for rejecting Ramirez's application.

## 3. Pretext for Discrimination

Because defendants have stated a legitimate, nondiscriminatory reason for not promoting him, Ramirez must demonstrate that the defendants articulated reason is a pretext for unlawful discrimination. Ra-

2. Leveau reportedly referred to Mexicans as "lazy" and "shiftless"; stated that Mexicans got out of work and took "advantage of the system"; took exception to "the two Mexican boys ... riding [the custodian's cart] together"; and stated his dislike for Mexicans.

mirez can prove pretext in two ways: "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang v. University of Cal. Davis, Bd. of Trustees,* 225 F.3d 1115, 1127 (9th Cir. 2000) (quoting *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1220–22 (9th Cir. 1998)). "[A] disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting his *prima facie* case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons." *Chuang,* 225 F.3d at 1127.

The district court dismissed all of the defendants except for Creson based on lack of personal participation in the alleged § 1983 violation. *See Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989) ("Liability under § 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."). It then found that there was no evidence that Creson intended to discriminate against Ramirez. These conclusions, except as to Director of Personnel, Jackie Weiss, are supported by the record.

■ Weiss's proffered explanation for the strict educational requirement is that supervisors are in leadership and administrative roles and should have at least the same minimum education requirement as their subordinate employees. Nowhere in the record, however, is the justification for, since 1991, requiring *Custodians* to have a high school diploma, thus raising the bar for Custodial Supervisors; and no one aside from the defendants themselves states that this requirement was justifiable for Custodial Supervisors.[3] Defendants note that since 1984 they have interpreted similar equivalency language to mean an absolute requirement for a high school diploma. Nevertheless, their consultant Ewing has testified that this interpretation was incorrect and that a person with adequate experience and no diploma could be a "fine" candidate for Custodial Supervisor; the defendants' expert witness has testified that he has never recommended an absolute high school diploma requirement for a custodial supervisor because such absolute requirements are inappropriate. In the words of the defendants' expert: "The only times we will use absolutes is when there's a statutory requirement: You must have a certificate to fly a plane; you must have a [drivers license] to operate equipment; you must be [a] member of the state bar. Those are the only absolutes that we would ever recommend."

Furthermore, Ramirez has presented additional specific and substantial evidence that Weiss's justification may be pretextual: (1) Weiss demonstrated her belief in his qualifications by permitting him to serve as interim supervisor of the custodial staff for a commensurate increase in pay; (2) there is some evidence that she may have been improperly influenced by former Custodial Supervisor Leveau to create a strict educational requirement for custodial positions; (3) she approved the con-

---

**3.** As Ramirez notes, defendants have never contended that he is now, based on the high school requirement, no longer qualified for his present position as Custodian; they have never contended that he was not qualified to apply for Custodial Supervisor in 1987; and they have never contended he was not qualified to serve as supervisor custodian during the seven months of Leveau's illness.

duct of her subordinates in which the educational requirement was applied strictly while the work experience requirement was applied loosely; (4) she knew that the requirement would have a disparate impact on Hispanics; and (5) she approved the hiring of a white candidate who may have had inferior qualifications.

Ramirez has raised an issue of fact about whether defendant Weiss's justification for the strict educational requirement constituted a pretext for intentional discrimination.

## B. Section 1981

Section 1981 prohibits discrimination in the making and enforcement of contracts by reason of race, including color or national origin differences, based on what was once originally thought of as race. 42 U.S.C. § 1981; *see St. Francis Coll. v. Al–Khazraji*, 481 U.S. 604, 609, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987). "[T]he term 'make and enforce contracts' includes the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Section 1981 specifically covers conduct by both private and state actors. 42 U.S.C. § 1981(c) ("The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."); *see Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968) (holding that § 1982, which like § 1981 was part of Civil Rights Act of 1866, bars public and private discrimination); *Tillman v. Wheaton–Haven Recreation Ass'n*, 410 U.S. 431, 439–40, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973) (citing *Jones* for proposition that § 1981 reaches private action); *see also Runyon v. McCrary*, 427 U.S. 160, 168–72, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976);

*Johnson v. Railway Express Agency*, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

■ The district court rejected Ramirez's § 1981 claim because, under California law, the employment relationship between the state and its civil service employees is governed by statute instead of by contract. Ramirez argues that this conclusion improperly provides a blanket immunity for all California employers from § 1981 liability. He is correct.

In *Judie v. Hamilton*, 872 F.2d 919 (9th Cir.1989), the plaintiff brought a § 1981 claim, contending that he was not permitted to perform all of the supervisory duties contained in his job description. We examined whether state or federal law controlled the determination of the legal status of the plaintiff's job description. Because the language of § 1981 provided no specific guidance, we applied the Supreme Court's three-step process, based on 42 U.S.C. § 1988, for borrowing an appropriate rule. *Id.* at 922.

> First, courts are to look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect." If no suitable federal rule exists, courts undertake the second step by considering application of state "common law, as modified and changed by the constitution and statutes" of the forum State. A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not "inconsistent with the Constitution and laws of the United States."

*Burnett v. Grattan*, 468 U.S. 42, 47–48, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984); *Judie*, 872 F.2d at 922 (quoting *Burnett*). Because the civil rights statutes do not provide a body of law for interpreting contracts, we looked to Washington state law to determine whether the job descrip-

tion constituted a contract. Washington law provided that the terms and conditions of public employment are not contractual. "If the terms of public employment affecting compensation, layoffs, and reemployment do not create contractual expectancies, then we do not believe that [plaintiff's] job description creates contractual expectancies either." *Id.* at 923. We thus found no cognizable claim for violation of the right to contract under § 1981. *Id.*

The district court cited *Judie,* and then examined California state law. Like Washington law, California contract law provides that "public employment is not held by contract but by statute." *Miller v. State of Cal.,* 18 Cal.3d 808, 135 Cal.Rptr. 386, 557 P.2d 970, 973 (1977); *see Shoemaker v. Myers,* 52 Cal.3d 1, 276 Cal.Rptr. 303, 801 P.2d 1054, 1068 (1990) (same). Applying California law, the court found that Ramirez, a public employee, had not asserted a contractual right to promotion and thus could not maintain a § 1981 action.

The court's conclusion is inconsistent with the third-step of the test set forth in *Judie:* predominance of the federal interest. The Civil Rights Act of 1866 implemented the Thirteenth Amendment, which was enacted with an intent to remedy "the most self-evident deprivation of slavery, the right to contract freely for one's labor." 2 Joseph G. Cook & John L. Sobieski, Jr., Civil Rights Actions ¶ 5.13 (Lexis–Nexis 1983 & Supps.); *see General Building Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 383–88, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (summarizing legislative history of § 1981). The Supreme Court has always presumed that § 1981 bars discrimination by government enti-

ties, and has repeatedly held that § 1981 *also* bars discrimination by private parties. *See Runyon,* 427 U.S. at 168–72; *Johnson,* 421 U.S. at 459–60. Even under the most restrictive reading of the contract requirement, "whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer. If so, then the employer's refusal to enter into the new contract is actionable under § 1981." *Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).[4] Ramirez would pass the *Patterson* test: he seeks to become a supervisor, which entails moving from non-exempt to exempt status for overtime purposes, passage from the bargaining unit to management, and taking on new responsibilities.

*Judie* does not suggest that a promotion claim brought by a civil service employee should be barred by the statutory nature of his employment. First, the plaintiff in *Judie* did not bring a claim that went to the heart of an employment relationship, i.e., the right to employment. Second, we approved of the analysis in *Adams v. McDougal,* 695 F.2d 104, 108 (5th Cir. 1983), which found that federal rather than state law controlled the § 1981 claim by a plaintiff who sought employment as a political appointee rather than as a contractual employee. There, the Fifth Circuit relied on the third-step of the three-step process for borrowing an appropriate rule to determine whether the claim was contractual in nature: "state political-appointee law was inconsistent with the Constitution and the laws of the United States." *Judie,* 872 F.2d at 923 (discussing holding in *Adams* ); *cf. Botefur v. City of Eagle Point,* 7 F.3d

---

**4.** In 1991, Congress reacted to the *Patterson* Court's narrow reading of the terms "to make and enforce contracts" by amending § 1981 to specify a more expansive scope. *See* 42 U.S.C. § 1981(b).

152, 155–56 (9th Cir.1993) (quoting 42 U.S.C. § 1988 for the proposition that in the civil rights context, the courts incorporate state law only where federal law is "deficient in the provisions necessary to furnish suitable remedies," and where state rule is not "inconsistent with the Constitution and laws of the United States."). Third, we are aware of no decision in which a court has applied state civil service laws to exempt state employees from the protection of § 1981 for denial of promotion claims.

The district court erred in granting judgment on the pleadings on plaintiff's § 1981 claim. If California law is read to bar public employees from bringing denial of promotion claims, it conflicts with the Constitution and § 1981 because it restricts Ramirez's ability to contract for employment. *Cf. Miller*, 135 Cal.Rptr. 386, 557 P.2d at 973–74 (noting that pension rights, unlike tenure of civil service employment, are deferred compensation that cannot be destroyed without impairing contractual obligations).

Whether a plaintiff has faced intentional discrimination under § 1981 is governed by the same test as for discrimination under § 1983, the burden-shifting scheme of *McDonnell Douglas. See Patterson*, 491 U.S. at 186; *see also General Building Contractors Ass'n*, 458 U.S. at 382–89 (holding that § 1981 protects only against intentional discrimination, not against disproportional impact). Ramirez appeals the § 1981 claim because liability is not coextensive under §§ 1981 and 1983: while respondeat superior liability is barred under § 1983, the doctrine applies under § 1981. *See Miller v. Bank of America*, 600 F.2d 211, 213 (9th Cir.1979). *But see Federation of African American Contractors v. City of Oakland*, 96 F.3d 1204 (9th Cir.1996) (finding that amended § 1981 permits direct suits against state actors, but preserves the same "policy or custom" requirement as § 1983 to impose respondeat superior liability on them).

Because Ramirez can show an issue of fact about intentional discrimination by Weiss under § 1983, he also can demonstrate an issue of fact about intentional discrimination by Weiss under § 1981. There are no triable issues of fact as to any of the other defendants.

### III

**AFFIRMED in part, REVERSED in part, and REMANDED** for trial as to defendant Jackie Weiss on the plaintiff's § 1981 and § 1983 claims.